P. MIRICK HARWOOD *vs.* INHABITANTS OF OAKHAM.

Worcester.    October 3, 1890. — October 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Town — Defective Highway — Bridge — Traveller.*

A town is not liable for personal injuries sustained by a traveller on a highway in falling from a bridge thereon, if, being acquainted with the bridge, he knowingly passes outside a rail marking the limits of the way prepared for travel, to assist his servant, who has there fallen into the stream.

TORT for personal injuries occasioned to the plaintiff by reason of the want of a railing on a bridge at the side of a highway in the defendant town. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, which, so far as material to the point decided, is as follows.

The plaintiff testified that at the time he was injured he was on his way from Coldbrook to Worcester with a drove of cattle; that the bridge in question, or culvert, was made of block stone

covered with gravel, with faced abutments; that between rails marking on either side the limits of the travelled path, the distance was twenty-one feet; that it was about two feet from the rail to the abutment on either side ; that among others he had a boy to assist him ; that when he reached the bridge it was dark, and, some of the cattle having strayed, he "sent the boy back to head the cattle, — to get around them. The next thing I heard was that the boy was in trouble. I heard some one else cry out. I went to look for the boy. I went down to one side of the road, and was informed he was not there. I supposed from the best knowledge that I could obtain that the boy was in the water somewhere. I heard him cry out, and I stepped to where I thought the voice came from. This was right at the edge of the travelled part of the road, and I stepped right out there, and as soon as I got to where the brush came up I supposed the boy was there in the water right under, and I thought by reaching a little distance I could get hold of him, and in doing that I lost my balance and went right down beside him, seventeen and a half feet. In going, to save myself I grabbed something, which drew me around, and I fell over on my back. I struck on my back and neck. When I went over, I could not see down at all. I could not see the boy. I could not see anything of the abutment, or of the rail. I did not notice anything of the rail. I was there the Sunday after the accident ; the accident was Friday night. There was a rail there then ; one end of it was upon the stone, and the other end lay upon the ground. . . . The rail that was down at one end had a hole two to three inches from the end of the rail, and between that and the end of the rail it was slivered up like spreading my fingers apart. Slivered out two or three inches. It was a pole. It was not a new pole. It had the appearance of being weather-beaten. It was all of the same color. The end that was down laid right down to the foot of the stone, beside the stone."

On cross-examination he further testified as follows : " I have lived in Barre all my life. There is a gravel road over the bridge. It is a much travelled road, the main road between Worcester and Coldbrook. I had been over the road before, — over the road occasionally. I always take that road in going to Worcester and return. As long as I have known

the road, the culvert and high bridge have existed in substantially the same way it was at the time of the accident. I was in the vicinity of the accident for one half-hour or more before it happened. . . . I do not recollect exactly where I went over. I must have stepped over the rail. I must have stepped high enough not to trip over. And then there was two feet of turf grown between that and the edge of the precipice. I knew I was out of the travelled part of the highway. When I got over there on that turf ground, I felt for the edge with my foot. I supposed the boy was in the water right by. I was reaching at the same time. I reached too far and went down head first. I did not know when I was there whether that was twenty feet down there or one. I lost my balance. I knew I was out of the travelled part of the highway. I do not know whether I told any one that night that I stepped over the rail. . . . I felt with my foot because I wanted some place to put my foot to reach for the boy. I thought my foot was on firm ground when I was reaching over. I was reaching over because I thought there was water there. I knew it was unfamiliar ground, and I wanted to be sure where I was, and in doing that I lost my balance and went down."

The plaintiff's testimony as above set forth was contradicted in various particulars by witnesses called by the defendant.

At the conclusion of the evidence, the defendant asked the judge to rule that the plaintiff could not recover, but the judge refused so to rule; and the defendant excepted.

The judge, among other things, instructed the jury as follows: " The obligation is imposed upon the town to make this road safe and convenient for a traveller who is using the road as a traveller within the meaning of the term. . . . If you are satisfied . . . that what occurred there occurred in connection with the use of the highway for the purpose of travel, — was natural and reasonable and incident to that use, — and you are so satisfied upon the evidence, it would be competent for you to find, if you think that you ought to find, that Harwood was a traveller at that time within the meaning of the statute, and as such a traveller was entitled to the protection which the statute provides. This instruction presupposes that you find he was using the highway for the purpose of going along; that his

day's journey was not completed; that what the boy did in trying to get his position on the bridge was done for the purpose of aiding in driving along the cattle; and that Harwood had the mind and purpose to continue his journey, — that these things accidentally occurred, and that what he did he did with reference to rescuing the boy and putting himself in a position to resume his journey. If you find such to be the facts from the evidence, and find that what occurred was naturally incident, reasonably incident, to the use of the highway for the purpose of travel, as they were using it, then I think, as I say, that you would be warranted upon the evidence in finding, if it seems to you you ought to find, that he was a traveller within the meaning of the statute. The burden is upon him to satisfy you, under this instruction, that he was a traveller at the time he received the injury. He must also satisfy you that he was in the exercise of reasonable and ordinary care at the time he received this injury, and that no want of reasonable and ordinary care contributed to it. . . . The defendant's position is, that it was not the legal duty of Harwood to search for the boy. That is correct. . . . But I am very glad to be able to say, that while the law does not undertake to impose upon men the performance of moral and Christian duties, as distinct from legal duties, it still does recognize the fact that a man may engage in a performance of a moral duty without having it imputed to him as a fault, and the two propositions are quite distinct."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. W. Rice & H. W. King,* (*C. M. Rice* with them,) for the defendant.

*A. M. Taft,* for the plaintiff.

DEVENS, J. We have assumed that the word "traveller," which is found in the statute, is not there used in any narrow or restricted sense, and that the highway is to be kept safe and convenient for all persons having occasion to pass over while engaged in any of the pursuits or duties of life. *Blodgett* v. *Boston,* 8 Allen, 237. If, therefore, the plaintiff was using that portion of the highway which the defendant town was bound to keep in repair to aid his servant, who, while executing his orders, had fallen into the brook, he was doing so lawfully, and if

injured, while exercising due care himself, by a defect in the highway, he might recover damages for the injury thus sustained. If, also, while using the way with due care for this purpose, he was induced to leave, or betrayed into leaving, its travelled limits by reason of the absence of a barrier, which it was the duty of the defendant to maintain in order that the way there should be reasonably safe, an injury thereby occurring to him by a sudden descent in its immediate vicinity, occasioning a fall, or in any similar manner, this would be a sufficient ground for recovery. *Snow* v. *Adams*, 1 Cush. 443. *Palmer* v. *Andover*, 2 Cush. 600. *Hayden* v. *Attleborough*, 7 Gray, 338. *Sparhawk* v. *Salem*, 1 Allen, 30. *Puffer* v. *Orange*, 122 Mass. 389. *Barnes* v. *Chicopee*, 138 Mass. 67.

If, in travelling near the edge of a way, there might be danger of being precipitated down an embankment, or into the water, and a railing or other barrier would be necessary to make travelling thereon safe, but the absence of such barrier in no manner contributed to the accident, and the existence of it would not have prevented the injury, the town would not be responsible by reason of its absence. *Palmer* v. *Andover*, 2 Cush. 600.

As the defendant is not bound to keep the whole limits of the way, or locality, in repair, but only so much as is needed to accommodate the travel, if a traveller voluntarily leaves the reasonable limits set apart for travel for his own purposes, however laudable, he does not become entitled to the rights of a traveller in the portion of the way outside those limits, and cannot maintain an action for the injury which he sustains on account of defects therein. In the case at bar, the plaintiff, according to his own testimony, was acquainted with the bridge over the stream by falling from which the injury to him was occasioned. It was a culvert or bridge covered with gravel, with faced abutments. The abutments extended two feet beyond and outside of the rails which marked the travelled part, and it was twenty-one feet between the rails. The plaintiff, who was conducting a drove of cattle, and who had himself passed over this bridge, became anxious lest a boy in his employ (whom he had sent back to prevent some of the cattle from straying homewards) had fallen into the water, and returned to look for him, and, if necessary, to help him. He knew of the existence of the

water, and in his examination in chief says: " I heard him [the boy] cry out, and I stepped to where I thought the voice came from. This was right at the edge of the travelled part of the road, and I stepped right out there, and as soon as I got to where the brush came up I supposed the boy was there in the water right under, and I thought by reaching a little distance I could get hold of him, and in doing that I lost my balance and went right down beside him." In his cross-examination he says: " I must have stepped over the rail. I must have stepped high enough not to trip over. And then there was two feet of turf grown between that and the edge of the precipice. I knew I was out of the travelled part of the highway. When I got over there on that turf ground, I felt for the edge with my foot." He then describes his reaching down for the boy, and his losing balance, and again adds: " I knew I was out of the travelled part of the highway." There was also evidence that the rail near which the plaintiff fell off was partially down at one end, and so that it could be stepped over.

With this evidence the plaintiff could not be held to be a traveller, in the use he was making of the highway outside of the travelled limits, to whom the defendant was to be held responsible if it had failed to make the way there safe and convenient for his use. Whether the rail was down or up was immaterial, if the plaintiff knew that he had passed outside those limits. He had not been betrayed into leaving the travelled part by any failure to find the rail where it should have been to protect him from approaching too near the edge of the abutment which it was intended to guard. He had voluntarily determined to pass out of the way as prepared for travel, and to assume the risk of approaching the unguarded embankment, for the edge of which he was feeling with his foot. If he did this in his anxiety for the safety of the boy, however creditable his motive, he did so at his own risk, and not at that of the defendant. The defect in the rail, if one existed, did not contribute to his injury, and no such case is presented as would be afforded if, by reason of its absence, he had approached the abutment unaware of the danger. His injury was occasioned by his consciously leaving the travelled path to encounter a danger outside of and beyond it. The town has done the duty imposed on it by statute when

it has made a suitable way reasonably safe and convenient for travellers. It is not responsible to those who voluntarily choose to pass outside its limits for injuries caused by imperfections which there exist.

Apparently, the case was submitted to the jury upon the charge of the learned judge who presided only as to the question whether the plaintiff, in what he did or attempted to do for the rescue of the boy, acted with reasonable prudence and discretion, without any reference to the inquiry whether in what he did he was consciously acting outside of the travelled limits of the highway. It was said that, if what he did " occurred in connection with the use of the highway for the purpose of travel, — was natural and reasonable and incident to that use," the plaintiff proposing to resume his journey, it was competent for the jury to find that the plaintiff was a traveller, and as such entitled to the protection which the statute provides. This instruction disregards the fact testified to by the plaintiff, that he knew he was outside of the rail which marked the travelled way, and would impose upon towns a responsibility for the condition of their roads outside their travelled limits, if any transaction there occurs connected with or incident to the use of the highway which is in any way affected by the imperfection of that external condition. It would make towns responsible for injuries incurred in attempting to enter upon or leave the travelled way, if the conduct of the person doing so was reasonably careful, as such a transaction would be connected with the use of the highway, and incident thereto. This has been often decided to be otherwise. *Tisdale* v. *Norton*, 8 Met. 388. *Shepardson* v. *Colerain*, 13 Met. 55. *Smith* v. *Wendell*, 7 Cush. 498.

The liability of towns for defects in the highway is statutory. They are not liable for defects in the highway not within the travelled path, and not so connected therewith that they affect the safety and convenience of those using it. If the traveller's horse strays by accident from the travelled path, that being safe and convenient, and he pursues him beyond those limits in order to resume and continue his journey, he must do so at his own peril. The same rule must apply where the companion or servant of the traveller has wandered beyond those limits. If, in order to relieve or rescue him, the traveller also passes beyond,

he enters upon land which the town is not bound to keep in repair for his use on his journey. To extend its liability for injuries there occurring would be to subject a town to the necessity of keeping in repair the whole way as located, which it certainly is not bound to do.

We have considered the case solely upon the evidence of the plaintiff, which was to some extent controlled by that of others; but upon that he was not, in our opinion, entitled to recover.

*Exceptions sustained.*