NELLIE E. PRINCE, administratrix, *vs.* LOWELL ELECTRIC LIGHT CORPORATION.

Middlesex.     January 14, 1909. — February 26, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Causing death, In use of electricity.     *Electric Light Corporation. Electricity.*

In an action under R. L. c. 171, § 2, as amended by St. 1907, c. 375, by an administrator for causing the death of the plaintiff's intestate by reason of the negligence of the defendant's agents or servants, it is not always necessary to show any positive act of care on the part of the plaintiff's intestate. Due care on his part may be inferred from the absence of fault when sufficient circumstances are shown to exclude negligence on his part.

In an action by an administrator against an electric light corporation for causing the death of the plaintiff's intestate by a shock of electricity from contact with a live wire of the defendant which had become broken by reason of the negligence of the defendant's agents or servants, if there is evidence on which it could be found that the plaintiff's intestate, on discovering that the live wire had broken in front of his house, went into the highway to follow up the wire to the cross arm of the pole to which it was attached, in order to read on the cross arm the name of the corporation maintaining the wire and thus be able to notify it to remove the live wire, and that while he was doing so the end of the broken wire, swaying above his head in the wind, fell striking him on the nose, causing him to fall, and in some way after his fall touching his finger, there is evidence of due care on his part to be submitted to the jury.

TORT by the administratrix of the estate of Calvin Fletcher Prince, under R. L. c. 171, § 2, as amended by St. 1907, c. 375, against the Lowell Electric Light Corporation for causing the death of the plaintiff's intestate by a shock of electricity from contact with a live wire of the defendant which had become broken by reason of the alleged negligence of the defendant's agents or servants, on August 4, 1907, near the corner of Middlesex Street and Dartmouth Street in the town of Chelmsford. Writ dated September 25, 1907.

In the Superior Court the case was tried before *King,* J. The evidence upon the question whether at the time of the accident the plaintiff's intestate was in the exercise of due care is described in the opinion. At the close of the evidence the defendant asked the judge to rule as follows: " There is no evidence sufficient to justify a verdict that the plaintiff's intestate, at the time when he received his injury, was in the exercise of due care." The judge refused to make this ruling, and the defendant excepted.

Certain other rulings which were requested by the defendant were incorporated by the judge in his charge, and are referred to in the opinion as making clear portions of the charge to which the defendant excepted.

During the trial the plaintiff called as a witness one French, who testified that he was the superintendent of distribution for the defendant. Referring to sparking in trees, he said that whether he would consider that a defective condition or not would depend a good deal upon where it was and how serious it was. The plaintiff then asked him this question, " Take it in this case. Suppose you saw those flames or lights in the trees in front of Mrs. Prince's house from time to time. Would that be a dangerous condition, a defective condition of the wires?" The witness answered, " If it was such as has been shown, I should say it was, yes, sir."

The answer was objected to by the defendant on the ground that it was based on what somebody else had testified. The judge ordered that the first part of the answer be stricken out. The defendant contended that the whole answer should be stricken out, but the last part of the answer the judge allowed to stand, and the defendant excepted.

The judge, at the close of his charge to the jury, at first instructed them as follows: "The cause will never be better tried than it has been here and now before you. You have heard all the evidence, you have had it enforced by arguments of counsel, you have been given the principles of law. No one will ever be in a better position than you are to decide it. Decide it. Let nothing prevent you from deciding it. Doubtless you will reach a conclusion before the court adjourns. I expect you will. If, however, at half-past three this afternoon you should still be in conference, as I have no idea you will, you will instruct your foreman what your verdict is, the verdict will be signed by him, whether for the plaintiff or the defendant, and if for the plaintiff the amount will be written out, and if for the defendant he will sign the blank which is given for that purpose, he will seal the verdict and report it in court Monday morning."

Upon objection by the plaintiff to the foregoing portion of the charge, the judge said: "You may strike that out, gentlemen. It is of no importance when I expect you. I expect you to reach a verdict when you can. Consider my remark that I expect you to reach a verdict before three o'clock as stricken out; disregard it. I am hopeful that you will, however."

The defendant's counsel said, "I also wish to except to the portion of the charge where the jury were instructed with reference to the time when a verdict should be brought in."

The judge said, "That has been withdrawn."

The defendant's counsel then said, "And to the statement which your honor made in withdrawing it, that you hoped or expected that the jury would report to-day."

The judge submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $8,000. The defendant alleged exceptions.

*S. E. Qua & F. W. Qua*, for the defendant.

*W. H. Bent*, for the plaintiff.

BRALEY, J. This is an action of tort brought under R. L. c. 171, § 2, as amended by St. 1907, c. 375, to recover damages for the death of Calvin Fletcher Prince, the plaintiff's intestate, who lost his life by a shock of electricity from contact with one of the defendant's wires, which carried at the time nearly twenty-three hundred volts. The record is silent as to the defendant's

negligence, with the exception of a minor question as to the admission of evidence, and the principal question for decision arises upon the refusal to give the defendant's request, that " there was no evidence sufficient to justify a verdict that plaintiff's intestate at the time when he received his injury was in the exercise of due care."

The conduct of the decedent to within a very few minutes of his death does not seem to have been in dispute. In front of the house were poles on which wires were strung belonging to the defendant, and attached to the cross arms was the name of the company by which they were owned. See R. L. c. 122, § 23. Upon ascertaining that two of the wires on the side of the cross arm nearest the house had parted during a severe storm, and that two of the ends, emitting electricity, had lodged in the trees through which they ran and were hanging down inside the fence near the gate leading from the street to the house, he went through the back yard to a neighbor, to telephone those who owned the wires of their condition. But, upon being asked to whom the message should be sent, he replied, " I don't know, and I will go and find out." He was next seen by his wife to return across the lawn, and almost immediately she saw him in the street in front of the house when he stepped into the car track, walking westerly with his head up tracing the wires. The jury would be warranted in finding from her evidence, and the description of the premises, that, not only - he had safely leaped the front fence and had passed into the street, but, as the wires were held up by the trees, he was following them back to the cross arms to which they were attached to find the name.

If a householder, upon finding broken live electric wires upon his premises giving out flashes of electricity whenever they touch the ground, uses a public way for the purpose of finding to whom they belong in order that the owner may be notified to remove such a source of danger to life and property, he is lawfully upon the way as a traveller. *Harwood* v. *Oakham*, 152 Mass. 421, 424. He is also in no sense a volunteer, but is rightfully seeking by the use of ordinary means of information and communication to protect his property and the lives of himself and his family.

After having become a traveller the plaintiff's intestate was not again seen alive, and it is necessary to ascertain his movements and conduct, and to consider what inferences the jury would be warranted in drawing therefrom.   The description of the witnesses, as to the position of the broken wires on each side of the walk leading from the street to the house, varied according to the time of observation.   But the witness who first observed and called the attention of the decedent to the matter entered the house by the front gate.   He described two of the ends as hanging down on the easterly side inside the fence four to five feet from the ground, where they were swept about by the wind, and flashed as they touched the ground.   Other witnesses corroborated him, and the jury could find that at the time of the accident these wires remained suspended in the trees in which they were entangled, and from the position where the body lay at some distance west from the walk, that the decedent did not come into contact with them, but was engaged in running the wires back from the westerly end.   It also would be a circumstance of some probative weight, that this course was the more practicable, if not the only satisfactory one to take, as the easterly wires because of the denser foliage were more difficult to trace.

With the exception of a witness called by the defendant, all the witnesses, in their description of these wires before the accident, placed the west wire nearest the house, or the inside wire, as hanging down resting either inside or outside the fence with the end in the yard, but made no reference to the second or outside wire.   The defendant's witness described the outside wire as " resting inside the fence," but the jury might reject his testimony so far as it was inconsistent with the evidence offered by the plaintiff.   If they did, there was evidence which would warrant a finding, that just before the decedent passed, the inside wire alone had fallen, leaving the outside wire still suspended in the roadway.   All the witnesses who viewed the body shortly after the accident agreed that this wire was then swinging in contact with the ground with the end about a foot from the head.   An examination of the body showed a burn on the bridge of the nose very nearly between the eyes about half an inch long and a quarter of an inch wide.   It was the opinion of the medical expert that this was a characteristic burn

from electricity and that the cause of death was an electrical shock. There also was a burn on the forefinger of the hand, but whether of the right or left hand was in dispute, while neither the thumbs nor the other fingers showed any marks of contact. It is the defendant's contention that but two conclusions can be reached, that either, moved by a sudden impulse which he could not resist, he touched or took hold of the inside west wire and pulled it off the fence, or that he voluntarily placed himself in a position of known danger. The jury, from the fact that if he had grasped the inside wire on the fence there would have been a burn on the thumb or other fingers, coupled with the further facts of the distance of the body from this wire and that from the voltage death must have been instantaneous, could reject this theory as wholly improbable.

In one of two other ways, then, he must have been killed; either he ran against the outside wire as it hung suspended, with the end hanging down, or it fell upon him as he was passing. The plaintiff upon either of these alternatives must sustain the burden of proof by showing that the intestate exercised due care. If no eye witness saw him at the time of death, yet in *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379, 382, 383, Mr. Justice Devens said, " It is not necessary that any positive act of care should be proved. It may be inferred from the absence of fault, when sufficient circumstances are shown fairly to exclude the idea of negligence on his part." See also *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137; *Caron* v. *Boston & Albany Railroad*, 164 Mass. 523, 526 ; *Lewis* v. *Brotherhood Accident Co.* 194 Mass. 1; *Adams* v. *Iron Cliffs Co.* 78 Mich. 271; *Hopkinson* v. *Knapp & Spalding Co.* 92 Iowa, 328. When he left home the decedent knew of the position of the easterly wires, and the jury could say that upon his return, after having passed into the street to avoid them, as well as the inside wire, he walked in the car track, which appears to have been about seven feet from the fence. They could find further that the outside wire had not then fallen, but that, as he walked with his attention directed to the name at the cross arm of the pole, it was blown so far down by the wind that without any warning the swaying end fell, striking him upon the nose, and in some way after his fall touched his finger. But even if this

wire was hanging in the position in which it was found after his death, and he saw it, the jury could infer from the common experience of mankind, that with the sparking end in full view he did not deliberately expose himself to the chance of instant death. *Caron* v. *Boston & Albany Railroad*, 164 Mass. 523. *Garant* v. *Cashman*, 183 Mass. 13, 18. Nor can it be said as matter of law, that if he attempted to pass while the live wire was swinging across the way, that he was careless, but the question of his negligence, if he had survived and described the occurrence, would have been for the jury. *Linton* v. *Weymouth Light & Power Co.* 188 Mass. 276, 278. It should be said further that, as the intestate was a traveller, the manner of his coming in contact with the wire, which might have been found to have been a defect in the way for which the defendant was responsible, is not material if he was not negligent. *Bourget* v. *Cambridge*, 156 Mass. 391, 394. The ruling requested was properly refused, and the instructions to which the defendant excepted, when taken in connection with its requests which were given, were appropriate. *Bourget* v. *Cambridge, ubi supra.*

If the instructions as to the hour in which the jury should return their verdict went too far, the modification which the judge gave removed the objection. The jury must have fully understood that they were not limited as to time in their deliberations. In presenting to them reasons why they should reach an agreement, the instructions did not invade the right which every juror has after hearing and weighing the opinions of his fellows, to abide by his own convictions even if they may be the other way. *Highland Foundry Co.* v. *New York, New Haven, & Hartford Railroad*, 199 Mass. 403.

The plaintiff, having introduced evidence to show that previous to the accident sparking had been observed in the trees where the wires ran, could go further and show by a competent expert that this emission of flame or light indicated that the wires were in a defective or dangerous condition. No question having been made of the qualifications of the defendant's superintendent, whom the plaintiff called as a witness, the answer, that in his opinion if this condition was shown the wires were defective, was properly allowed to stand.

*Exceptions overruled.*