SARAH F. RALPH, administratrix, *vs.* CAMBIDGE ELECTRIC LIGHT COMPANY.

SAME *vs.* SAME.

Middlesex.    November 12, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence.*

In an action by the administratrix of the estate of one who had been employed .as a general repair man in a factory building, against an electric light company, whose wires, carrying a current of electricity more than sufficient to destroy human life, were attached to an upright pole with a cross arm upon the roof of the factory by permission of its proprietor, for causing the death and conscious suffering of the plaintiff's intestate by means of an electric shock received by him when in the course of his duty he had gone to the roof to repair a leak, it appeared that the plaintiff's intestate in some way received an electric shock and at some time after receiving it fell from the roof of the factory to the roof of a shed below, that he was conscious when assistance reached him and remained so for three quarters of an hour, when he died, that both of his hands were burned badly, the right one through to the bone, and that the back of his neck also was burned badly. A witness testified that, his attention being attracted by the groans of the intestate, he looked up and saw him on the roof of the factory, that he was on his back and was squirming around with his hands over the wire or two wires. No one saw the accident or testified to the manner in which it occurred. *Held*, that there was nothing to show that the plaintiff's intestate was in the exercise of due care, and that, as the manner of the accident was purely a matter of conjecture, a verdict properly was ordered for the defendant.

TWO ACTIONS OF TORT between the same parties and arising out of the same accident; the first under R. L. c. 106, § 72, for the death of the plaintiff's intestate, and the second at common

law for the conscious suffering of the plaintiff's intestate before his death.  Writs dated May 18, 1907.

In the Superior Court the cases were tried together before *Sherman*, J.  The following facts among others appeared in evidence: The plaintiff's intestate was employed as general repair man for Houghton, Mifflin and Company at their factory building in Cambridge known as the Riverside Press.   Upon the roof of this building the defendant corporation maintained, with the consent of Houghton, Mifflin and Company, an upright pole with a cross arm to which there were attached, among other wires, two high tension wires.   These, at the time of the accident, carried approximately two thousand volts of electricity and the testimony in the case showed that that voltage was considerably above the amount required to destroy human life.   The roof was flat on top, the flat portion being covered with tin, and on each edge sloped off through a space from twelve to fifteen feet, the sloping part being covered with slate.   The upright in question was attached to the flat part of the roof and the wires started from it at a height somewhat above eight feet from the roof.   The wires then slanted downward across the flat part of the roof and one of the sloping sides to a fixture on an adjoining building below and were covered with some sort of rubber insulation.   The plaintiff's intestate was thirty-six years old at the time of the accident, which occurred on January 1, 1907, at about half-past eight o'clock in the morning.   It was undisputed that the deceased in some way received an electric shock and at some time after receiving it fell from the roof of the building to the roof of a shed below.   He was conscious when assistance reached him, and remained so for some three-quarters of an hour, when he died at the Cambridge Hospital.  In addition to some broken bones, due to the fall from the roof, it appeared in evidence that both of the intestate's hands were burned badly, the right one through to the bone, and that the back of his neck also was burned badly.   There was evidence that the intestate went to work that morning as usual and that about half an hour previous to the accident he went into his house, which was near by, where he saw his wife and obtained a glass of milk.   His wife testified that he then appeared as he usually did, was apparently well and in good spirits.   He then

went back to the Riverside Press and was directed to go to the roof to repair a leak. He went into the shop and obtained some ' strips of zinc to use in the repairs, and while there spoke a few words with the foreman of the shop.

One Long testified that he was employed at the Riverside Press as day watchman and gardener. At the time of the accident he was in the yard of the building and within sight of the corner of the roof where the intestate was injured. His attention was attracted by the intestate's groans, and the witness looked up and saw him on the roof. He was on his back and was squirming around with his hands over . the wire or two wires. His head was downward and was about three slates back from the edge of the roof.' His body and feet were further back up the roof. The witness called to him and then started to run to his assistance, but when the witness got upon the roof the intestate had fallen off to the roof of the shed below.

There was other evidence, the character of which is described briefly in the opinion.

At the close of the plaintiff's evidence, the counsel for the defendant moved that a verdict be directed in each case for the defendant. The counsel for both parties then agreed that the judge should direct a verdict for the defendant in each case with the stipulation that, if he was wrong in so directing a verdict, judgment should be entered in the first case, under R. L. c. 106, § 72, for the plaintiff in the sum of $3,000 as damages, and in the second case, at common law, for the plaintiff in the sum of $500 as damages. Thereupon the judge ordered verdicts for the defendant, and reported the cases for determination by this court in accordance with the terms of the agreement of the parties.

*A. P. Stone*, for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

HAMMOND, J. Even if it be assumed in behalf of the plaintiff that there was negligence of the defendant, still there is one fatal defect in each case. She has failed to show that the deceased was in the exercise of due care. From the time he began to ascend the ladder which led to the skylight in the roof until, about ten minutes later, he was seen by the witness Long "squirming" around upon the roof with his hands over the

defendant's wires, nothing is known of the care he exercised in his movements. No one saw him or heard him, nor is there any circumstance shown which throws the slightest light as to his care for himself during that interval. The manner in which the accident occurred is purely a matter of conjecture. The case is clearly distinguishable in this respect from *Saures* v. *Stevens Manuf. Co.* 196 Mass. 543, and other similar cases cited by the plaintiff, and must stand in the class of which *Brodie* v. *Rockport Granite Co.* 197 Mass. 147, is a type.

In each case the entry must be

*Judgment for the defendant.*