PETER CAVAGNARO *vs.* LAWRENCE P. SOULE & another.

Suffolk.   December 8, 1908. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's Liability.

If a workman employed in the construction of a building, who for the last four or five years has worked more or less around derricks and has helped to move derricks many times when the "boss" has called him, is ordered by a superintendent of his employer to help in moving the parts of a derrick, when a boom of another derrick fifty-two feet long and ten inches by twelve, which previously has been placed by order of the superintendent leaning against the wall at an angle of forty-five degrees with its foot resting on a plank three inches thick and its other end resting against the wall, without anybody touching the boom or the plank on which it rests, suddenly slips and injures the foot of the plaintiff who is working near it, the plaintiff cannot recover from his employer for his injuries thus caused, there being nothing to show what caused the boom to slip and it being impossible to say that the mere placing of such a heavy stick of timber at an angle of forty-five degrees with one end resting on a plank and the other against the wall is evidence of negligence ; and, *it seems,* that a workman of so much experience in moving derricks assumes the risk of such an accident as one of the obvious risks of his employment.

TORT by a workman for personal injuries sustained by him on May 17, 1904, while in the employ of the defendants.   Writ dated November 28, 1904.

In the Superior Court the case was tried before *Richardson,* J.

The plaintiff testified that on May 17, 1904, at half past ten o'clock in the forenoon, he was working for the defendants as a laborer in the construction of a building on Boylston Street, Boston.   He was working where the engineer was, helping him. " Ray, the boss, said, ' Peter, come upstairs and help me to take them sticks from there.'   He called me and then he showed me with his hands and showed me where.   I came upstairs and. I went over there to help him on the second floor.   He was there, but afterwards he went away ; he went up above.   He ordered six of us there.   I commenced to help them take up these big pieces of wood that was there to take away; it was the foundation of the derrick.   Ray, the head one, told me to go and lift on those pieces.   When I got up and started in to lift on this piece of wood, the boom of another derrick was there.   It was fifty-two feet long and ten inches one way and twelve the other.   One end of the boom was leaning up against the wall of the building.

The bottom of it — the foot of it — was resting upon a piece of plank of three inches thick and six inches wide." The witness illustrated the angle at which the boom stood, and the counsel agreed that the angle so illustrated was forty-five degrees. "My nearest foot to the end of the boom when it slipped was about six inches away. No one was standing nearer the end of the boom than myself. The other men were some on one side and some on the other of the stick we were lifting on. Just before I was hurt, I was standing, stooping over and touching my hands to the floor, and when I was standing there in that position, stooping over and lifting with the others on this foundation stick, the boom slipped down and came down on my foot. When I was standing there and lifting on the foundation piece of the derrick, I did not know that the boom, resting on another piece of plank that they were not touching, I did not know that the end of the boom would slip. There was nothing nearer to the plank on which the boom rested than my foot which was six inches away. No one was touching or working upon the boom itself or the plank it rested upon at the time it slipped and went upon my foot. The pieces of foundation that we were lifting on were a foot and a half from the piece of plank. I had been working there before I got hurt a quarter of an hour taking away the foundation of the derrick. During that quarter of an hour up to the time I got hurt, no part of the foundation of the derrick touched the piece of plank that the boom rested on. When we took the pieces of the foundation, we brought them over on the floor there. I believe they were to be taken up for the derrick upstairs." The plaintiff's injuries consisted of the loss of two toes and other injuries to the foot.

On cross-examination the plaintiff testified that he had been in this country ten or eleven years, during the last four or five of which he had worked more or less around derricks. He also testified "I have helped move derricks many times when the boss called me. At the time of the accident some men were working on the floor above. I didn't see anybody."

One Caine, called by the plaintiff, testified : "I was working on the building on Boylston Street for the defendants that morning before Peter got hurt. I was on the second floor. They took the derrick up, took the mast up and landed the mast on

the top floor, and came down to get the bed pieces for it; we came down to get that. Mack Ray was there and he worked for Soule. He was boss. He had men around there working all the time and he had charge of them. He did nothing at all only walk around and look at the men and give orders. He was there every morning about seven o'clock and there all day. He did nothing except to give the men instructions how to work, where to work. He was present when the derrick was taken down on the second floor before Peter got up there. The boom was right on the floor; the socket on a three inch plank; the other end was stuck up in the building right up in the air, standing right up on the floor. It was fifty-two feet long. When the boom was placed in that way, Mr. Ray was there; four or five more laborers. When that boom was put up, Mr. Ray said, ' Put the boom back there,' and we put it there and left it there, on the three inch plank. Mr. Ray told us to put it on that piece of plank just before Peter got hurt. We were after taking it apart, taking the bolts out and the socket that sets on top of it. Peter was side of me. I was next to him, and two more on that side. We were going to lift the bed piece up to take it away, and it tipped up. The bed piece was about a foot and a half away from the boom. Peter had hold of the bed piece in his hand; we had it in our hands to carry it away, and the boom slipped back and caught him in the toes. We dropped the bed piece right where it was. At the time that end slipped, there was no one around there working on the boom. Nobody had worked on that boom, or changed its position from the time we put it up there at Mr. Ray's order until the accident happened. There was an engine down in the first floor, working — a machine on the first floor, working on the other derrick. I do not think that engine jarred the building any. It was on the first floor, and the other derrick was way the other side of the building. The floor that we were working on was all three inch plank floor; all finished up floor."

On cross-examination, the witness testified that there were a good many men working on the building at that time, carpenters on the third floor. The witness did not know whether they were working near the boom or not.

At the close of the plaintiff's evidence, the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*D. L. Smith,* (*F. Leveroni* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendants, were not called upon.

MORTON, J.  There was evidence warranting a finding that the sole or principal duty of Ray was that of superintendence, and that the boom was placed by his direction leaning up against the wall as it was at the time of the accident.  There was also evidence that the plaintiff was in the exercise of due care ; but we see no evidence of negligence on the part of the superintendent.  It was agreed that as the boom stood it was leaning against the wall at an angle of forty-five degrees, and the evidence showed that the foot of it rested upon a three inch plank.  The plaintiff, by the direction of Ray, was working near the boom when the end that rested on the plank slipped and struck his foot causing the injuries complained of.

There was nothing to show what caused the boom to slip.  For aught that appears the boom, when it was placed in the position in which it was at the time of the accident, was rested securely at one end upon the plank and at the other against the wall.  What caused the accident is altogether a matter of conjecture.  It would seem probable that in removing the pieces which constituted the foundation of the derrick, the plank on which the boom rested was in some way struck or jarred by the workmen engaged with the plaintiff in that operation so as to cause the boom to slip.  It cannot be said that it was or could be found to be negligent to place a stick of timber fifty-two feet long and ten by twelve inches leaning against a wall at an angle of forty-five degrees, with one end resting on a plank and the other end resting against the wall.  Notwithstanding the lateral thrust it naturally would be supposed that if the ends were securely placed the mere weight of such a piece of timber would tend to hold it firmly in position.  See *Childs* v. *American Express Co.* 197 Mass. 337.  *Brodie* v. *Rockport Granite Co.* 197 Mass. 147.  *Thomas* v. *Boston Elevated Railroad,* 193 Mass. 438.

Moreover it would seem in view of the plaintiff's experience that the risk of such an accident as occurred was one of the obvious risks of the employment.

*Exceptions overruled.*