SIGVARD L. HAMMA, administrator, *vs.* HAVERHILL GAS
LIGHT COMPANY.

Essex.   November 4, 1909. — November 23, 1909.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, In use of gas, Gross, Causing death, Due care of plaintiff's decedent.

The inhabitants of a district of a city were supplied with gas by a gas company
through two mains, one a nine inch main and the other a three inch main, which
crossed a river at different points, and it became necessary to repair the nine
inch main and consequently for a period to cut off the gas at both mains.  An
employee of the company, who either knew or should have known that, if the
gas were shut off at the nine inch main but not at the three inch main, a tempo-
rary variation of pressure would occur which would cause gas lights then burn-
ing to go out and afterwards gas to escape through the unlighted burners, when
directed to turn the gas off at the three inch main while another employee was
turning it off at the nine inch main, failed to do so, which caused an escape of
gas in the house of a customer and the death from gas poisoning of one of his
household.  *Held*, that such employee was guilty of gross negligence within the
meaning of R. L. c. 171, § 2.

At the trial of an action under R. L. c. 171, § 2, against a gas company to recover
for the death of a domestic in the employ of a customer of the defendant, there
was evidence tending to show that, because of gross negligence of one of the
defendant's employees, the gas pressure at the house of the customer without
notice to him or to any of his family suddenly ceased between seven and eight
o'clock on a Sunday morning, and then was renewed, so that, if a gas light was
burning when the pressure was withdrawn, it would go out and, on the return
of the pressure, gas would escape unlighted ; that in the domestic's room was a
fixture, not owned by the defendant, at which the gas could be turned off by an
ordinary stop cock, or, with the stop cock turned on, could be turned on or off
and lighted by the use of an electrical lighting device at the tip, and that it
would not be apparent from the appearance of the electric lighting apparatus
whether the gas was turned on or off; that the domestic had spent the evening
of Saturday with the sister of one to whom she was betrothed and, very happy,
had left her at fifteen minutes after eleven and was not seen again until she was
found between half past eight and nine o'clock the next morning, lying uncon-
scious and half dressed in bed in her room, with the gas turned on at both the
stop cock and the electric lighter and with the room full of gas, and that without
regaining consciousness she died from the effects of gas poisoning two or three
days afterwards.  *Held*, that there was no evidence which would warrant a
finding that the decedent was in the exercise of due care at the time she
received the injuries which caused her death, the cause of the gas fixture's
being open being a matter of mere conjecture.

TORT, under R. L. c. 171, § 2, by the administrator of the
estate of Carine Mathilda Wikne, who, the declaration alleged,

lost her life by reason of gross negligence on the part of agents or servants of the defendant. Writ in the Superior Court dated May 31, 1906.

The case was tried before *De Courcy*, J. There was evidence tending to show the following facts:

The plaintiff's intestate was employed as a domestic in the family of one Ellis, who lived in what is known as the Bradford district of Haverhill, a part of the city south of the Merrimack River. The defendant supplied the Bradford district with gas just before the death of the intestate through two mains, one a nine inch main and the other a three inch main, which crossed the river at different points. It becoming necessary to repair the nine inch main, the defendant, by an advertisement in a paper published on the afternoon of Saturday, November 18, 1905, stated that gas would be shut off from seven o'clock in the morning until five o'clock in the evening of the next day, Sunday. An employee also was asked by the defendant to notify gas consumers in the Bradford district. The Ellis house was supplied with gas by the defendant, but no one in the house was notified by the defendant that the gas would be turned off on Sunday, and no one read the advertisement.

The gas fixture in the room of the plaintiff's intestate in the Ellis house was of the ordinary type, except that it had an electric lighting apparatus. This electric lighting apparatus was attached to the tip of the fixture and was so arranged that, upon a small chain being pulled, if the cock of the fixture next the wall was open, a passage was made for the gas to the tip, where, coincidentally, an electric spark was caused, which would ignite the gas; the next pulling of the chain would turn off the gas at the tip, and so on, the gas being turned on and off, alternately, by successive pullings of the chain, and, if the fixture and batteries were in proper condition, a spark being made at the tip each time the chain was pulled. The appearance of the electrical device was the same whether the gas was turned on or off. The gas fixture and the lighting apparatus were the property of Ellis.

On Sunday morning one of the defendant's employees turned off the gas at the nine inch main, but another employee, who was directed to turn it off at the three inch main at about the same

time, failed to do so. The contention of the plaintiff was that, because of the unequal pressure from the two mains, on the turning off of the gas at the nine inch main, the pressure at gas lights then lighted would be removed and the lights would go out, but that shortly afterwards the pressure from the three inch main would assert itself and gas, unlighted, would flow from fixtures where formerly it had been lighted.

The plaintiff's intestate was seen alive at fifteen minutes after eleven o'clock in the evening of Saturday, November 18. She had spent the evening with a friend, one Clara Parker, the sister of a man to whom she was engaged to be married. When she left that house, she was very happy. Somewhere between half past eight and nine o'clock on the morning of the next day, she was found in bed in her room, partially dressed and almost wholly unconscious, the gas cock open, the cock on the electric lighting fixture also open and the room filled with gas. She died two or three days after of gas poisoning without regaining consciousness.

At the close of the evidence, the defendant made the following, among other, requests for rulings :

" 1. Upon all the evidence in the case, the plaintiff is not entitled to recover."

" 4. There is no sufficient evidence to warrant the jury in finding that the plaintiff's intestate was in the exercise of due care at the time of the accident."

" 10. There is no sufficient evidence to warrant the jury in finding that the death of the plaintiff's intestate was caused by the gross negligence of the defendant's servants or agents."

" 19. There is no sufficient evidence to warrant the jury in finding that the plaintiff's intestate left a mother surviving her as next of kin, and without such evidence the plaintiff cannot recover."

The presiding judge refused to rule as requested, there was a verdict for the plaintiff; and the defendant alleged exceptions.

*J. J. Winn*, for the defendant.

*J. P. Sweeney*, (*W. J. McDonald* with him,) for the plaintiff.

BRALEY, J. It may be assumed the jury could have found that the defendant's servants, who were charged with the duty of making the changes, either knew or should have known of

the very serious consequences which might follow if, after disconnecting the large gas main at the upper bridge, they failed to shut off completely the supply of gas coming through the smaller main at the lower bridge. *Thompson* v. *Cambridge Gas Light Co.* 201 Mass. 77, 80. In view of this peril to the health or lives of those whose houses were supplied by these mains, the act of one of the servants, who could have been found to have left the small main open after he had been ordered by the foreman to close it, would have warranted a finding of gross negligence within the meaning of R. L. c. 171, § 2, under which the action is brought. *Oulighan* v. *Butler*, 189 Mass. 287. *Mullins* v. *New York, New Haven, & Hartford Railroad*, 201 Mass. 38. *McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491.

But if the tenth request accordingly was properly refused, and the exceptions to the refusal to give the nineteenth request, not having been argued, must be treated as waived, the first and fourth requests should have been given.

By the provisions of the statute, before any recovery could be had, the burden of proof was on the plaintiff to introduce some affirmative evidence that her intestate exercised due care. If no positive testimony could be procured, proof of circumstances which excluded any act of contributory negligence would have been sufficient. *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276, 281, and cases cited. But if we turn to the testimony covering the period elapsing after the time she left the house of a friend shortly before midnight, and the next morning when between eight and nine o'clock she was found in her bedroom lying on the bed partially dressed, and although living and partially conscious, yet speechless from poisoning by illuminating gas, from the effects of which she steadily sank and died without recovering further consciousness, the most careful scrutiny reveals nothing as to her movements and conduct. If from the various circumstances of her life as they are disclosed, there may have been no motive for suicide, and the suggestion that she died by her own hand could have been negatived by the jury, all else rests upon pure conjecture. The plaintiff very urgently contends, that whenever the decedent may have sought repose, she must have left the gas burning, as the electric lighting arrangement with which the burner was equipped did not appear to have been defective, and

the flow of gas from the jet, when the condition of affairs in the room was first discovered, continued unchecked. The fact, however, sought to be proved is, that neither by any careless act of commission or of omission did the decedent contribute to the accident which caused her death. But when all the facts which the witnesses observed are given their full probative effect they fail to establish a connection with the conclusion which must be reached. If upon retiring the gas remained lighted, but was subsequently extinguished by the insufficient pressure owing to the change of mains, or if in using the electric lighter by which the gas was not only ignited, but turned off, and which when set would not show from any observation of the fixture itself whether the gas was on or off, she in some way failed to stop the flow either wholly or partially, or if, having effectually done so, she then inadvertently switched the gas on again, are all mere assumptions. In this realm of speculation, where all theories necessarily end in supposition, neither hypothesis is exclusive, nor can it conclusively be inferred that one is more probable than another. *French* v. *Sabin*, 202 Mass. 240.

The action, therefore, cannot be maintained.

*Exceptions sustained.*