CATHERINE E. HORNE, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 9, 1910. — June 24, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Practice, Civil*, Exceptions, Agreement as to facts.   *Negligence*, Employer's liability. *Street Railway.*

In an action by an administratrix, against a corporation operating a railway by electricity, to recover damages for conscious suffering of the plaintiff's intestate and for causing his death, while he was in the employ of the defendant as a conductor, at the close of the plaintiff's evidence the defendant rested its case and the presiding judge ordered a verdict for the defendant.   At the end of a bill of exceptions alleged by the plaintiff was the following: " The foregoing comprises a statement of facts not in dispute, and all the evidence and proceedings material to the questions of law raised by these exceptions."   *Held*, that

by reason of this statement there could be no question whether the plaintiff's uncontradicted evidence should be accepted as true.

In an action, by an administratrix, against a corporation operating by electricity a railway in a tunnel, to recover damages for conscious suffering of the plaintiff's intestate and for causing his death, while he was in the employ of the defendant as the conductor of a trolley car running separately, it appeared that at the terminus in the tunnel there was a single track, in leaving which the last car in, after the motorman and the conductor had changed ends, was necessarily the first car to go out, that when the car on which the plaintiff's intestate was the conductor reached the terminus there was a car there ready or nearly ready to go out, and that the intestate's car was stopped five or six feet short of the car then in, that the intestate went to what had been the front end and was to be the rear end of his car and was-standing between the rails adjusting the trolley when the other car started forward, crushing him so badly that he died. At the close of the plaintiff's evidence the defendant rested and the presiding judge ordered a verdict for the defendant. By the evidence it appeared that on the car which started and caused the accident there were from eleven to seventeen persons on the back platform and that the hand brake operated from this platform, which had been set by the motorman before he changed ends, was not released by the conductor, who after the car had started made a dash to it through the crowd and found that it then was not on, and that it must have been released by a third person, but whether this was done accidentally or intentionally was left by the evidence a matter of conjecture. There was evidence that before the accident third persons had been caught releasing the hand brakes intentionally, and there also was evidence that the hand break could be released by a passenger's accidentally striking its handle, especially when the pressure of the brake shoe had been somewhat diminished by its dropping a fraction of an inch under the weight of a crowd of passengers. It appeared that before and at the time of the accident other cars of the defendant were furnished with a leather strap which went down from the top of the brake handle to prevent the hand brake from being released accidentally, and that there was not such a strap on the car that started. *Held*, that, if the hand brake was released by a third person intentionally there was no negligence on the part of the defendant, that, if the hand brake was released accidentally, it might have been held to be evidence of negligence that the car was not furnished with a strap to prevent the brake from being released accidentally, but that, as it was wholly a matter of conjecture whether the brake was released accidentally, there was no evidence that it was thus released, and the question in regard to negligence in failing to provide a strap did not arise; therefore that it was right to order a verdict for the defendant.

LORING, J.    This is an action to recover damages for conscious suffering and for causing the death of James W. Horne.

Horne was the conductor of an electric car running from East Boston through the tunnel to the terminus in Boston near the Old Court House. When the car reached that end of the route the motorman and conductor changed ends, and the trolley was shifted if the car was a single trolley car. In the case here in question it was a single trolley car. When Horne's car

reached this terminus there was a car there ready or nearly ready to go out.    There was but a single track and consequently the car last in (Horne's car) was to be the first to go out. Horne's car was stopped some five or six feet short of the car then in.    Horne went to what had been the front end and was to be the rear end of his car, and was standing between the rails adjusting the trolley when the other car started forward, crushing him so badly that he died.

At the place here in question there is a down grade of two and eight-tenths per cent.    The practice of the defendant in operating the car first in under the circumstances of the case at bar was as follows.    The car was stopped by the air brake, the hand brake was set up, and the air break was released.    The conductor and motorman changed ends.    When the trolley was adjusted the conductor rang one bell.    This was a signal to the motorman to set the air brake at his end of the car.    When he had done so he rang two bells.    This was a signal for the conductor to release the hand brake at his end of the car.    When he had done so he rang two bells, which was a signal to start the car.

In the case at bar the conductor of the car first in was in doubt whether his car started forward just after he rang one bell or just as he rang it, or just before he rang or was to ring it.    But the car started forward before the motorman had set the air brake or had rung the two bells (to indicate that he had set the air brake so that the hand brake could be released) and the conductor had not in fact released the hand brake.

When the conductor saw the car begin to move he made a dash through a crowd of some eleven to seventeen persons on the back platform and found that the hand brake was not then on.    He gave it two or three turns, when the car was reversed and the hand brake taken out of his hands by the car being reversed.    The motorman's story was that he set the hand brake before he left what had been the forward end of the car and had taken his place at the other end; that just as he thought that it was time for the bell to ring telling him to set his air brake (so that the hand brake in the rear which he had set could be released), he turned to shut the vestibule door leading into the car, and as he turned some one on the platform called "Look out!" He turned as quickly as he could, saw the car was moving, made

a rush and set the emergency brake.   But it was too late.   By the time this brake was applied the two cars had come together with Horne between them.   Thereupon the motorman released the air brake, threw the reverse handle into the forward position and sent the car back five or six feet.   The motorman thought that he heard the one bell signal just as he heard the shout from some one on the platform to " Look out! "   He was not sure whether he did or did not get that signal.   He was sure that he did not give the two-bell signal, and that he had not released the hand.brake before he left the other end of the car.

In addition it appeared that air brakes are apt to start leaking at any time, and for that reason cannot be relied upon to hold a car as well as hand brakes and that before this accident third persons had been caught intentionally releasing hand brakes.

There was also evidence that the effect of a large number of passengers being on the car would be to cause the brake shoe to drop a sixteenth or a quarter of an inch, and the effect of that would be to relieve the pressure of the shoe on the wheel and so make it " easy " to release the brake handle or the dog by which the hand brake was held in position after it was set up.   But that this drop in the shoe brake would not release it to such an extent as to make it unable to hold the car.   There was no defect in or trouble with the hand brake of the car that started.

It also appeared that before and at the time of this accident there was on other cars of the defendant company a leather strap which went down from the top of the brake handle to prevent the hand brake from becoming released accidentally, and that there was not such a strap on the car that started.   It also appeared that the hand brake could be released by a passenger's accidentally striking the handle of the hand brake, especially when the pressure of the brake shoe had been somewhat diminished by its dropping a fraction of an inch under the weight of a crowd of passengers.

This was the case disclosed by the plaintiff's evidence.   The defendant rested, and the judge * directed the jury to find a verdict for the defendant.

It is stated at the end of this bill of exceptions that: " The foregoing comprises a statement of facts not in dispute, and all

---

* *Brown*, J.

the evidence and proceedings material to the questions of law raised by these exceptions." That statement eliminates from the case any question of the kind before the court in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, and we have not discriminated between the facts of the case and the testimony of the plaintiff's witnesses as to those facts.

On this evidence the cause of the starting of the car was a matter of conjecture. In view of the clause in the bill of exceptions that "the foregoing comprises a statement of facts not in dispute," on this evidence the hand brake which had been set by the motorman before he changed ends must have been released by a third person accidentally or intentionally; but which was left on this evidence a matter of conjecture. If it was intentionally released by a third person there was in our opinion no negligence on the part of the defendant. It might have been held to be negligent not to have had a strap to prevent it from being released accidentally, if the evidence had warranted a finding that it was accidentally released. But in the absence of that evidence that question does not arise. The case comes within *Kenneson* v. *West End Street Railway,* 168 Mass. 1; *Regan* v. *Lombard,* 181 Mass. 329; *Curtin* v. *Boston Elevated Railway,* 194 Mass. 260; *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188; *Ralph* v. *Cambridge Electric Light Co.* 200 Mass. 566.                              *Exceptions overruled.*

*R. E. Buffum,* for the plaintiff.

*W. G. Thompson,* (*R. Spring* with him,) for the defendant.