NELLIE LYDON, administratrix, *vs.* EDISON ELECTRIC ILLUMINATING COMPANY.

Middlesex.    March 14, 1911. — September 5, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Due care of plaintiff's decedent, Causing death.    *Death.*

An employee of a town in the course of his duties was in a tree within the limits of a highway destroying gypsy and brown tail moth nests. Through the tree ran three telephone wires and above them seven electric light wires, one of which, a primary wire which carried twenty-three hundred volts of electricity, had the insulation worn off from it in the tree. Before going into the tree the employee's attention had been called to the worn place on the wire. He went past and above the wire safely and, having completed his work, handed his tools

down, and, as he was descending, asked a fellow workman whether the wire above described, pointing to it, " was a street light," and the fellow workman answered that he thought it was. The foreman on the ground, hearing the question and answer, told him that if it was " there is no current on." The employee then descended to a point below the wire. He was not seen alive again. Less than a minute later he was heard to groan and was found dead about a foot below the wire with his left arm extending above his head in a bent position and the inside of the tip of the third finger in contact with the wire at the place where the insulation was worn off. He was standing rigid, bent a little backward, with a spur which he wore on his right foot driven into a limb. In an action by his administrator against the electric light company which maintained the wire to recover for the death under R. L. c. 171, § 2, as amended by St. 1907, c. 375, it was *held*, without deciding whether there was evidence of negligence on the part of the defendant, that there was no evidence to warrant a finding that the employee was in the exercise of due care when he was killed, the manner of his death being left a matter of conjecture.

MORTON, J.   While at work in the employ of the town of Winchester, destroying gypsy and brown tail moths in a tree at the corner of Mount Pleasant Street and Highland Avenue in that town, the plaintiff's intestate was instantly killed by reason of his left hand coming in contact, at a place where the insulation had been worn off, with an electric light wire running through the tree, and maintained by the defendant. This is an action under R. L. c. 171, § 2, as amended by St. 1907, c. 375, to recover damages for his death. There was a verdict for the plaintiff and the case is here on exceptions by the defendant to the refusal of the presiding judge * to rule that upon all the evidence the plaintiff was not entitled to recover and to give certain other rulings that were requested, to the admission of evidence, and to certain portions of the charge.

It appeared that at the corner of Mount Pleasant Street and Highland Avenue there was a large pole on which were two cross arms. From the lower cross arm three telephone wires passed through the tree, and from the upper, seven electric light wires, including the one by which the plaintiff's intestate was killed. It was admitted that the electric light wires were controlled, maintained and operated by the defendant. It was also admitted that the tree was within the limits of the highway. The wires were parallel with Mount Pleasant Street, which ran east and west. The distance of the upper wires from the ground

---

* *Bond*, J.

was variously estimated at from twelve to twenty feet more or less. The wire which the plaintiff's intestate came in contact with was the northerly wire on the upper cross arm. This was what was called a primary wire and carried twenty-three hundred volts, more than twice enough to cause instant death. Shortly before the accident the deceased had gone up into the tree for the purpose of destroying moths' nests. There was evidence tending to show that he went up till he was about a foot above the electric light wire, and that he was from fifteen to eighteen inches to one side and northerly of the wire which killed him and on the side next to the street. In going up he went one side of the wires and not through them so far as appeared. Before going up his attention had been called by the foreman to the place on the wire where the insulation was worn off, and he passed the wire safely in going up. Worn places on wires were not uncommon and the men were expected to look out for them and to warn each other. The evidence tended to show that after he had finished cutting off and painting the nests he passed down his cutting pole and the swab with which he had been painting the nests and prepared to descend along the limb where he was. While going down he asked one of the men, who was in the tree and back to back with him and about five or six feet away on the opposite side of the tree, whether he thought a certain wire was a street light and the man said he thought it was, and the foreman, who was on the ground and heard the question and answer, thereupon said that if it was " There is no current on." The man of whom the question was asked testified that the deceased pointed to the second wire and not to the one by which he was killed. But the jury might have found that he was mistaken and that the deceased pointed to the other wire, the one which killed him. At the time when he asked the question the deceased had descended several feet. This was the last time that he was seen alive. Shortly after, the time varying according to the witnesses from two seconds to half a minute or more, one of the men heard a groan and looking up saw the deceased about a foot below the wire with his left arm extending up above his head in a bent position and the inside of the tip of the third finger in contact with the wire at the place where the insulation was worn off. The deceased was standing rigid, bent

a little backward, with the spur on his right foot driven into the limb. His hold on or contact with the wire was broken as soon as possible and he was taken down, but was found to be dead.

We assume in favor of the plaintiff without deciding that there was evidence of negligence on the part of the defendant.

The difficult question is whether there is any evidence warranting a finding that the plaintiff's intestate was in the exercise of due care. No one saw him when the accident that caused his death occurred. He had come down by the wire safely, just as he had gone up safely, and was a foot below it when in some entirely unexplained way the inside of the third finger of his left hand at the tip end of it came in contact with the wire. In order to make the contact he had to raise his hand about a foot above his head after, as we have said, he had come down safely by the wire. He was not required in the performance of any duty to examine the wire, and any presumption of due care which might have arisen in such a case is wanting. If, bearing in mind what had been said to him to the effect that if the wire was a street wire the current was not on, he chose to touch it for the purpose of testing the truth of the remark, it is manifest that he took the risk and the defendant is not liable. If as he went down he accidentally slipped or lost his balance and instinctively and naturally threw up his hand and happened in that way to touch the wire, that would not be inconsistent with due care on his part. *Garant* v. *Cashman*, 183 Mass. 13. But whether he did so or not is wholly a matter of conjecture. The fact that he exercised care in going down as it is shown that he did by the fact that he had got safely by the wire and by the fact that the spur on his right foot was driven into the limb, does not remove the manner in which the accident occurred from the field of conjecture or warrant an inference that at the instant of the accident he was in the exercise of due care. It is impossible to say that the fact that a man has been careful down to the instant before he is injured warrants of itself the inference that he was in the exercise of due care the instant after, when the accident occurs.

We assume in favor of the plaintiff that she was not bound to show positive acts of due care on the part of her intestate, but that it was sufficient if circumstances were shown which fairly

excluded negligence on his part or from which due care could be fairly inferred. The difficulty in the present case is that no circumstances appear in regard to the manner in which the accident happened from which such an inference can be fairly drawn. In *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276, relied on by the plaintiff, there was evidence of circumstances from which an inference that the deceased was in the exercise of due care at the instant that he was killed could be fairly drawn.

The case is a hard one, but we feel compelled to say that there was no evidence warranting a finding that the deceased was in the exercise of due care when he was killed. See *MacDonald* v. *Edison Electric Illuminating Co.* 208 Mass. 199 ; *Horne* v. *Boston Elevated Railway,* 206 Mass. 231 ; `Hamma` v. *Haverhill Gas Light Co.* 203 Mass. 572 ; *French* v. *Sabin,* 202 Mass. 240; *Ralph* v. *Cambridge Electric Light Co.* 200 Mass. 566 ; *McCarty* v. *Clinton Gas Light Co.* 193 Mass. 76.

The conclusion to which we have come on the principal question in the case renders it unnecessary to consider other questions which the defendant has raised.

*Exceptions sustained.*

*H. F. Hurlburt, Jr.,* (*C. M. Davenport* with him,) for the defendant.

*S. J. Elder,* (*J. T. Pugh* with him,) for the plaintiff.

