JAMES ASHTON, administrator, *vs.* FALL RIVER GAS WORKS
COMPANY.

Bristol.    October 25, 1915. — February 12, 1916.

Present: LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Causing death: due care of decedent.

In an action by an administrator against a gas company under R. L. c. 171, § 2,
as amended by St. 1907, c. 375, for negligently causing the death of the plain-
tiff's intestate by permitting gas to enter the pipes in a tenement, into which
the intestate and his wife had moved four days before, when the intestate had
reason to believe that the gas was shut off from the tenement, it appeared that
the body of the intestate was found seated in a·chair in his kitchen holding a
gas fixture or chandelier which had been unscrewed from the gas pipe above,
that on a table in front of the body were a rag and some cleaning material,
that the body of the intestate's wife was found lying on a bed in an adjoining
room, that both the intestate and his wife had died from gas poisoning, and
that the intestate last was seen alive entering his tenement five hours before his
body was found.  The presiding judge refused to rule that the plaintiff could
not recover, and the jury returned a verdict for the plaintiff.  On exceptions
by the defendant, it was *held,* that, there being no circumstances from which
it could be inferred that the intestate was actively in the exercise of due care as
required by the statute, the exceptions must be sustained, and judgment was
ordered for the defendant under St. 1909, c. 236.

TORT under R. L. c. 171, § 2, as amended by St. 1907, c. 375,
by the administrator of the estate of George Hoskar, late of Fall
River, for negligently causing the death of the plaintiff's intestate
by gas poisoning on April 5, 1913.  Writ dated May 5, 1913.

In the Superior Court the case was tried before *White,* J.  The
evidence is described in the opinion.  At the close of the evidence,
the defendant, among other requests, asked the judge to make the
following rulings:

"1. On the whole evidence the plaintiff is not entitled to
recover."

"5. There is no evidence in this case that the deceased was
actively and actually in the exercise of due diligence."

The judge refused to make these and other rulings requested by
the defendant, and submitted the case to the jury, who returned
a verdict for the plaintiff in the sum of $2,750.  The defendant
alleged exceptions.

A. J. Jennings, (I. Brayton with him,) for the defendant.

J. A. Kerns, for the plaintiff.

CARROLL, J. The plaintiff's intestate, George Hoskar, occupied the lower east tenement of a four-tenement building. He was last seen alive shortly after nine o'clock in the morning of April 5, 1913. He was then about to enter his own tenement. At two o'clock in the afternoon of that day he was found sitting on a chair in his kitchen, dead, from illuminating gas. Near by, or as one witness testified, in the hands of the deceased, was a gas fixture or chandelier which had been unscrewed from the gas pipe above, and there was a rag and some cleaning material on the table in front of him. The doors and windows were closed. It does not appear that the door or doors to the tenement were locked, but, when the smell of gas was noticed, an inspector from the gas company was called to the house, rapped at the door of the Hoskar tenement, and receiving no response went into the yard and opening one of the windows climbed into the room. Mrs. Hoskar was found lying on a bed in an adjoining room, dead from gas poison.

In the cellar of the house there were four shelves, on three of which there were gas meters. The main gas supply extended near the ceiling, above the shelves, and from this main pipe were four T's, one over each meter. The T above the vacant shelf was plugged. There were formerly four separate risers or uprights leading from the cellar, one to each tenement. From March, 1912, to February or March, 1913, one Walton occupied the two lower tenements. When he took possession, the risers for the two lower tenements were connected by a pipe, so that one meter served for both the lower tenements. When Walton moved out, "the meter connected with the two lower tenements was removed from the building by the defendant." In March, 1913, Mary Connelly moved into the lower west tenement, the other tenement on that floor being unoccupied. Gas was installed for her tenement and a meter set up. There were then three meters, each one on its own shelf and the fourth shelf was vacant. When the work was done by the defendant, no change was made in the risers, so that both the east and west tenements were supplied with gas through one meter which measured the supply for both. April 5, 1913, was Saturday, and on the Tuesday before (April 1), Hoskar

and his wife moved into the lower east tenement. One witness stated that he saw Hoskar on the night before his death and asked him if he had "got all straightened out," and Hoskar said, "Yes, we are pretty nearly all ready, only I am waiting on the gas."

Assuming that the defendant was negligent in permitting the gas to flow through the pipes of the lower east tenement when it was turned on for the Connelly tenement, and, by the peculiar arrangement of the pipes and meter, misleading the occupant of the east tenement to suppose there was no gas in his premises; and assuming that on the night before the fatality the deceased was misled and believed his tenement to be then without a supply of gas; still we are unable to find any evidence of that attention to his own safety and protection required at common law. If that is so, then there is none within the statute under which this action is brought.

Even if the doors were unlocked, we can find nothing in the record indicating any attempt on the part of the deceased to avoid the danger or to secure assistance. It may be that the gas escaped in such volume, was so insidious, and he was so suddenly overcome, that it was impossible to get away from the poison, open the door, or secure assistance; but we have no evidence whatever bearing on these questions. We can only conjecture. There is nothing showing the amount of gas which escaped, or within what time he was rendered insensible. Even if these facts were established, we do not decide that there then would be sufficient evidence to show the exercise of proper care. On Friday he supposed his tenement was free from gas. Assuming he was still ignorant of existing conditions on Saturday morning, there is nothing to show that he took any precautions whatever before he unscrewed the gas fixture, or why it was necessary to remove this fixture, even if he wished to clean it. In short, there is nothing indicating any effort on the part of the deceased to protect or save himself, and no circumstances appear showing how the accident happened, from which an inference can be drawn establishing his due care. What happened between nine o'clock in the morning and the time he was found dead, is "wholly a matter of conjecture, where one hypothesis as to what he did is as good as another, and therefore no inference of due care can be drawn affirmatively." Braley, J., in *Chester* v. *Murtfeldt*, 216 Mass. 537,

539.   *Lydon* v. *Edison Electric Illuminating Co.* 209 Mass. 529.
*MacDonald* v. *Edison Electric Illuminating Co.* 208 Mass. 199.

It follows that the defendant's exceptions must be sustained, and judgment is to be entered for the defendant, in accordance with St. 1909, c. 236.

*So ordered.*