Hillsborough,  }
  Dec., 1897.  }

### Buch v. Amory Manufacturing Co.

If an infant suffers injury from contact with dangerous machinery, there is no presumption that he was incapable of appreciating the danger or of exercising the care necessary to avoid it.

An owner is not bound to warn a trespasser of hidden or secret dangers arising from the condition of the premises, or to protect him against any injury that may ensue from his own acts or those of a third person.

Where dangerous machinery is in operation in the usual course of business, the owner is under no legal obligation to actively intervene for the protection of an infant trespasser against injury therefrom, although the latter is incapable of appreciating the danger or of exercising the care necessary to avoid it.

Case. Trial by jury and verdict for the plaintiff. March 30, 1886, the plaintiff, then eight years of age and unable to speak or understand English, was injured by the machinery in opera-

tion in the defendants' mill. The evidence tended to show that the plaintiff's brother, who was thirteen years of age, was employed as a back-boy in the mule-spinning room, and that at his request the plaintiff went into the room for the purpose of learning the work of a back-boy. The elder brother had no authority to request or permit the plaintiff to go into the mill or to instruct him, unless it could be inferred from the fact testified to by him that "he saw other boys taking their brothers to learn, as he understood from their motions." The plaintiff was in the mill for a day and a half until the accident, openly assisting more or less in the work of the back-boys. He testified that he was directed by a person not the overseer of the room, whom he saw "bossing" the other boys, to pick up some bobbins and put some waste in a box. There was evidence tending to show that Fulton, the overseer, who was in charge of and hired the back-boys and other operatives in the room, passed in the alleys near the plaintiff, and that he was well acquainted with his help. He testified that he had no knowledge of the plaintiff's presence in the room until about two hours before the accident, when, aware that the boy was not an employee, he directed him to go out, and thinking he might not understand English, took him to an operative who spoke the plaintiff's language, whom he told to send the plaintiff out. The plaintiff testified that Fulton spoke to him and, as he understood, directed him to remove his vest, but that he did not understand he was ordered to leave. There was no evidence except Fulton's that the order was communicated to the plaintiff, or understood by him. There was no evidence or claim that the machinery was improperly constructed or operated, or that it was out of repair. The plaintiff's hand was caught in a gearing which the back-boys were instructed to avoid, but there was no evidence that the plaintiff was given any instruction or warning whatever. There was evidence tending to prove that boys under thirteen years of age were not employed in the room, and that the place and machinery were dangerous for a child of the plaintiff's age. Subject to exception, a motion that a verdict be directed for the defendants was denied.

*Sullivan & Broderick* and *Burnham, Brown & Warren*, for the plaintiff.

*David Cross, David A. Taggart,* and *Elijah M. Topliff*, for the defendants.

CARPENTER, C. J. On the evidence, the jury could not properly find that the plaintiff was upon the premises of the defendants with their consent or permission. Although there was evidence tending to show that other back-boys had taken their brothers

into the room for the purpose of instructing them in the business, there was no sufficient evidence that the fact that they did so was known to the defendants, and there was evidence that on the first occasion brought to their knowledge they objected. Upon this state of the evidence, a license by the defendants — whether material or immaterial — for the plaintiff's presence in the room could not legitimately be inferred. The plaintiff was a trespasser.

The defendants' machinery was in perfect order and properly managed. They were conducting their lawful business in a lawful way and in the usual and ordinary manner. During the plaintiff's presence they made no change in the operation of their works or, in their method of doing business. No immediate or active intervention on their part caused the injury. It resulted from the joint operation of the plaintiff's conduct and the ordinary and usual condition of the premises. Under these circumstances, an adult in full possession of his faculties, or an infant capable of exercising the measure of care necessary to protect himself from the dangers of the situation, whether he was on the premises by permission or as a trespasser, could not recover.

The plaintiff was an infant of eight years. The particular circumstances of the accident — how or in what manner it happened that the plaintiff caught his hand in the gearing — are not disclosed by the case. It does not appear that any evidence was offered tending to show that he was incapable of knowing the danger from putting his hand in contact with the gearing, or of exercising a measure of care sufficient to avoid the danger. Such an incapacity cannot be presumed. *Stone* v. *Railroad*, 115 N. Y. 104, 109–111; *Hayes* v. *Norcross*, 162 Mass. 546, 548; *Mulligan* v. *Curtis*, 100 Mass. 512, 514; *Cosgrove* v. *Ogden*, 49 N. Y. 255, 258; *Kunz* v. *Troy*, 104 N. Y. 344, 351; *Lovett* v. *Railroad*, 9 Allen 557, 563.

An infant is bound to use the reason he possesses and to exercise the degree of care and caution of which he is capable. If the plaintiff could by the due exercise of his intellectual and physical powers have avoided the injury, he is no more entitled to recover than an adult would be under the same circumstances. The burden was upon him, and the case might be disposed of upon the ground that he adduced no evidence tending to show that he had not sufficient reason and discretion to appreciate the particular risk of injury that he incurred and to avoid it. But it may be that evidence tending to show the plaintiff's incapacity was adduced, and that the case is silent on the subject because this particular question was not made by the defendants.

Assuming, then, that the plaintiff was incapable either of appreciating the danger or of exercising the care necessary to avoid it, is he, upon the facts stated, entitled to recover? He was a tres-

passer in a place dangerous to children of his age. In the conduct of their business and management of their machinery the defendants were without fault. The only negligence charged upon or attributed to them is that, inasmuch as they could not make the plaintiff understand a command to leave the premises and ought to have known that they could not, they did not forcibly eject him.

Actionable negligence is the neglect of a legal duty. The defendants are not liable unless they owed to the plaintiff a legal duty which they neglected to perform. With purely moral obligations the law does not deal. For example, the priest and Levite who passed by on the other side were not, it is supposed,. liable at law for the continued suffering of the man who fell among thieves, which they might and morally ought to have prevented or relieved. Suppose A, standing close by a railroad, sees a two-year-old babe on the track and a car approaching. He can easily rescue the child with entire safety to himself, and the instincts of humanity require him to do so. If he does not, he may, perhaps, justly be styled a ruthless savage and a moral monster; but he is not liable in damages for the child's injury, or indictable under the statute for its death. P. S., c. 278, s. 8.

"In dealing with cases which involve injuries to children, courts . . . have sometimes strangely confounded legal obligation with sentiments that are independent of law." *Indianapolis v. Emmelman*, 108 Ind. 530. "It is important to bear in mind, in actions for injuries to children, a very simple and fundamental fact, which in this class of cases is sometimes strangely lost sight of, viz., that no action arises without a breach of duty." 2 Thomp. Neg. 1183, note 3. "No action will lie against a spiteful man, who, seeing another running into danger, merely omits to warn him. To bring the case within the category of actionable negligence some wrongful act must be shown, or a breach of some positive duty; otherwise, a man who allows strangers to roam over his property would be held answerable for not protecting them against any danger they might encounter whilst using the license." *Gautret v. Egerton*, L. R. 2 C. P. 371, 375.

What duties do the owners owe to a trespasser upon their premises? They may eject him, using such force and such only as is necessary for the purpose. They are bound to abstain from any other or further intentional or negligent acts of personal violence, — bound to inflict upon him by means of their own active intervention no injury which by due care they can avoid. They are not bound to warn him against hidden or secret dangers arising from the condition of the premises (*Redigan v. Railroad*, 155 Mass. 44, 47, 48), or to protect him against any injury that may arise from his own acts or those of other persons. In short, if they do nothing, let him entirely alone, in no manner

interfere with him, he can have no cause of action against them for any injury that he may receive. On the contrary, he is liable to them for any damage that he by his unlawful meddling may cause them or their property. What greater or other legal obligation was cast on these defendants by the circumstance that the plaintiff was (as is assumed) an irresponsible infant?

If landowners are not bound to warn an adult trespasser of hidden dangers,—dangers which he by ordinary care cannot discover and, therefore, cannot avoid,—on what ground can it be claimed that they must warn an infant of open and visible dangers which he is unable to appreciate? No legal distinction is perceived between the duties of the owners in one case and the other. The situation of the adult in front of secret dangers which by no degree of care he can discover, and that of the infant incapable of comprehending danger, is in a legal aspect exactly the same. There is no apparent reason for holding that any greater or other duty rests upon the owners in one case than in the other.

There is a wide difference—a broad gulf—both in reason and in law, between causing and preventing an injury; between doing by negligence or otherwise a wrong to one's neighbor, and preventing him from injuring himself; between protecting him against injury by another and guarding him from injury that may accrue to him from the condition of the premises which he has unlawfully invaded. The duty to do no wrong is a legal duty. The duty to protect against wrong is, generally speaking and excepting certain intimate relations in the nature of a trust, a moral obligation only, not recognized or enforced by law. Is a spectator liable if he sees an intelligent man or an unintelligent infant running into danger and does not warn or forcibly restrain him? What difference does it make whether the danger is on another's land, or upon his own, in case the man or infant is not there by his express or implied invitation? If A sees an eight-year-old boy beginning to climb into his garden over a wall stuck with spikes and does not warn him or drive him off, is he liable in damages if the boy meets with injury from the spikes? *Degg* v. *Railway*, 1 H. & N. 773, 777. I see my neighbor's two-year-old babe in dangerous proximity to the machinery of his windmill in his yard, and easily might, but do not, rescue him. I am not liable in damages to the child for his injuries, nor, if the child is killed, punishable for manslaughter by the common law or under the statute (P. S., c. 278, s. 8), because the child and I are strangers, and I am under no legal duty to protect him. Now suppose I see the same child trespassing in my own yard and meddling in like manner with the dangerous machinery of my own windmill. What additional obligation is cast upon me by reason of the child's trespass?

The mere fact that the child is unable to take care of himself does not impose on me the legal duty of protecting him in the one case more than in the other. Upon what principle of law can an infant by coming unlawfully upon my premises impose upon me the legal duty of a guardian? None has been suggested, and we know of none.

An infant, no matter of how tender years, is liable in law for his trespasses. 1 Ch. Pl. 86; 2 Kent 241; Cool. Torts 103; Poll. Torts 46; 2 Add. Torts 1126, 1153; 10 Am. & Eng. Enc. Law 668, *et seq.; Humphrey* v. *Douglass,* 10 Vt. 71; *School District* v. *Bragdon,* 23 N. H. 507; *Eaton* v. *Hill,* 50 N. H. 235; *Bullock* v. *Babcock,* 3 Wend. 391; *Williams* v. *Hays,* 143 N. Y. 442, 446–451; *Conklin* v. *Thompson,* 29 Barb. 218; *Neal* v. *Gillett,* 23 Conn. 437; *Huchting* v. *Engel,* 17 Wis. 237. If, then, the defendants' machinery was injured by the plaintiff's act in putting his hand in the gearing, he is liable to them for the damages in an action of trespass and to nominal damages for the wrongful entry. It would be no answer to such an action that the defendants might by force have prevented the trespass. It is impossible to hold that while the plaintiff is liable to the defendants in trespass, they are liable to him in case for neglecting to prevent the act which caused the injury both to him and them. Cases of enticement, allurement, or invitation of infants to their injury, or setting traps for them, and cases relating to the sufficiency of public ways, or to the exposure upon them of machinery attractive and dangerous to children, have no application here.

Danger from machinery in motion in the ordinary course of business cannot be distinguished from that arising from a well, pit, open scuttle, or other stationary object. The movement of the works is a part of the regular and normal condition of the premises. *Sullivan* v. *Railroad,* 156 Mass. 378; *Holbrook* v. *Aldrich,* 168 Mass. 15; *Rodgers* v. *Lees,* 140 Pa. St. 475. The law no more compels the owners to shut down their gates and stop their business for the protection of a trespasser than it requires them to maintain a railing about an open scuttle or to fence in their machinery for the same purpose. *Benson* v. *Company,* 77 Md. 535; *Mergenthaler* v. *Kirby,* 79 Md. 182. There was no evidence tending to show that the defendants neglected to perform any legal duty to the plaintiff. *McGuiness* v. *Butler,* 159 Mass. 233, 236, 238; *Grindley* v. *McKechnie,* 163 Mass. 494; *Holbrook* v. *Aldrich,* 168 Mass. 15, 17, and cases cited.

*Verdict set aside : judgment for the defendants.*

PARSONS, J., did not sit : the others concurred.