PHILIP J. PHILBIN, administrator, *vs.* MARLBOROUGH ELEC-
TRIC COMPANY.

Worcester.   May 19, 1914. — June 17, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Trespasser, In use of electricity.   *Tree.*

If the son of the owner of certain land, while engaged in removing browntail
moth's nests from a tree on the land, reaches with a pole across the boundary
of the land to cut off a nest on a bough of the tree which overhangs land of
an adjoining owner, he is not a trespasser, and if, while he is in the exercise of
due care, the pole comes in contact with an uninsulated wire carrying a current
of electricity of dangerous voltage negligently permitted by an electric power
company to pass through the branches of the tree, and he is killed, an action
may be maintained by the administrator of his estate against the company for
causing his death.

In an action by an administrator against an electric power company to recover
for the death of the plaintiff's intestate, who was killed while removing
browntail moth's nests from a tree on his father's land, by a pole which
he was using coming in contact with wires of the defendant on adjoining
land, there was evidence tending to show that the plaintiff's intestate was
standing on a large branch in the tree and near its trunk, that the pole was
long, shod with metal and furnished with a metal cutter from which a wire ran
to a handle by which he operated it; that the line of wires maintained by the
defendant carried a current of thirteen thousand volts, which was extremely
dangerous to life, that the wire nearest the tree was not insulated, that the
ends of the branches of the tree were moist with melted and unmelted snow,
that a current of electricity passed from the uninsulated wire through the
ends of the branches of the tree to the intestate, giving him a shock which
caused him to give a jerk to the pole, so that it either moved or fell and
came into direct contact with the defendant's wire, the full current from
which then passed into and through the intestate's body, killing him.   *Held,*
that findings were warranted that the intestate was in the exercise of due
care and that the defendant was negligent in the manner in which it main-
tained its wire.

*It seems* that the branches of a tree that overhang the land of a person other
than the owner of the land in which the tree is growing may be cut off by
such other owner to the extent that they overhang his land, but that, if he
does not exercise this right, the product of the branches belongs to the
owner of the trunk of the tree, who also must keep such branches from
creating a nuisance.

TORT by the administrator of the estate of Thomas G.
O'Donnell, for causing the death of the plaintiff's intestate as
stated in the opinion.   Writ dated February 21, 1912.

In the Superior Court the case was tried before *Aiken,* C. J. At the close of the evidence, it was agreed that a verdict should be ordered for the plaintiff for $2,500, and that the case should be reported to this court for determination, judgment to be entered for the plaintiff on the verdict without interest and without costs, if in the opinion of the court there was upon the legally admissible evidence an issue for the jury of the due care of the plaintiff's intestate and of the negligence of the defendant; otherwise, judgment to be entered for the defendant, without costs.

The case was submitted on briefs.

*W. G. Thompson & R. Spring,* for the defendant.

*H. Parker, G. E. O' Toole & G. A. Parker,* for the plaintiff.

SHELDON, J. The only question presented to us is whether there was upon the legally admissible evidence an issue for the jury of the due care of the plaintiff's intestate and of the negligence of the defendant.

The jury could find the following facts: The intestate was engaged under the direction of his father in removing browntail moths' nests from a tree upon his father's land. He was standing in the tree, near its trunk, on a large branch. A little outside of this land, the defendant maintained a line of wires carrying currents of electricity near to and through the ends of the branches of the tree, these branches overhanging the adjoining land. The wires carried electricity of a very high voltage, to wit, a circuit of thirteen thousand volts, which was extremely dangerous to life. One at least of these wires, that nearest to the tree in which the intestate was at work, was uninsulated. A current of electricity escaped from this wire into the ends of the branches of the tree, which were moist with melted and unmelted snow, passed to the intestate where he was standing and gave him a shock. The effect of this was to give a jerk to the pole which he had in his hands, by means of which he was clipping off the moths' nests at the ends of the branches. This caused the end of the pole, shod with metal and furnished with a metal cutter from which a wire ran to the handle by which the intestate operated it, to move or fall so as to come into contact with the wire. Immediately the current of thirteen thousand volts passed though the pole or the wire into and through the intestate's body, causing his death.

The intestate was not a trespasser, even if he did reach out his pole beyond the boundary of his father's land, to cut off moths' nests at the end of a branch.  He was doing the work under the direction and in the right of his father, who was required by law to remove the moths' nests from the tree.  Sts. 1905, c. 381, §§ 1, 6; 1906, c. 268, § 4; 1908, c. 591, § 2.  See also Sts. 1907, c. 521; 1909, c. 263; and 1910, c. 150.  The whole of the tree, including the branches which overhung the adjoining land, was the property of the intestate's father, even though the adjoining owner might have lopped off such branches to the extent that they overhung his property.  Unless the adjoining owner did this, it was the father's duty to remove the nests from such overhanging branches, and thus abate what the statutes above referred to had declared to be a nuisance, just as he would be entitled to the acorns or other fruit that grew thereon.  See the cases collected in 1 Cyc. 791, *et seq.*, and 28 Am. & Eng. Encyc. of Law, (2d ed.) 539.  The case at bar as to this comes under the rule that was applied in *Parker* v. *Barnard,* 135 Mass. 116; *Proctor* v. *Adams,* 113 Mass. 376; and *Winslow* v. *Gifford,* 6 Cush. 327.

The intestate was engaged in lawful work, in a place where he had a right to be, and was carrying on his work in the usual manner.  It does not appear that he had notice or knowledge of the danger to which he was exposed in consequence of what the defendant had done.  There was sufficient evidence of what his conduct was to take the case out of the range of mere conjecture, and we need not consider such cases as *French* v. *Sabin,* 202 Mass. 240; *Hamma* v. *Haverhill Gas Light Co.* 203 Mass. 572; *Lydon* v. *Edison Electric Illuminating Co.* 209 Mass. 529; and *Ridge* v. *Boston Elevated Railway,* 213 Mass. 460.  It could be found that he was in the exercise of due care.  *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495.

There was evidence also of the defendant's negligence, even if its act in putting its wires in this place was not a mere trespass.  It placed its wire, uninsulated and carrying a current of thirteen thousand volts, in such close proximity to these branches as to create a danger of electricity passing on to them whenever they were moistened with snow or rain, as they were liable to be at any time.  It knew, or must be presumed to have known, of the statutes above referred to and of the danger of just such an acci-

dent as did happen. A jury well could say that its conduct was negligent. That similar wires carrying similar currents are not insulated elsewhere, or that the cost of insulation would have involved greater expense in the transmission of power, is not decisive in the defendant's favor. The safety of human life does not necessarily yield to the desirability of furnishing light or power as cheaply as may be to the users thereof. Here also the principle is settled against the defendant by the case of *McCrea* v. *Beverly Gas & Electric Co., ubi supra.*

The evidence to the admission of which the defendant excepted was competent upon these issues. We have stated already the findings which could have been made thereon.

In accordance with the stipulation of the report, judgment must be entered for the plaintiff in the sum of $2,500.

*So ordered.*