Merrimack, }
Feb. 1, 1921. }

JOHN B. McCAFFREY *by his next friend,* ARCHIE M. McCAFFREY, *v.*
CONCORD ELECTRIC CO.

A boy while climbing a tree within the limits of a highway and on the land of an abutting owner, was injured by contact with a wire lawfully maintained across the tree by the defendant, an electric light company. Children had played about the tree and climbed into it but of this practice the defendant had no knowledge. On the foregoing and other evidence judgment was ordered for the defendant.

CASE, for negligence. Trial by jury and verdict for the plaintiff. The defendants excepted to the denial of their motion for a directed verdict and to certain instructions to the jury. The evidence relating to the exceptions is stated in the opinion. Transferred from the October term, 1919, of the superior court by *Branch,* J.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway (Mr. William N. Rogers* on the brief and orally), for the defendant.

PARSONS, C. J. The plaintiff, a boy of thirteen years, climbed a tree standing within the highway limits of a Concord street in a race with another boy to reach a hornets' nest in the tree. After climbing some distance he stopped to observe the progress of his competitor and while looking downward raised his hand above his head and grasped the defendants' wire, passing through the tree twenty feet above the ground, and received the injury for which suit is brought.

There is no evidence or suggestion that the defendants were not rightfully occupying the place where their wires passed for the trans-

portation or transference of electricity by wire. It must therefore be assumed that the location of their poles, the number of their wires and their height above the ground had been fixed by governmental authority. P. S., c. 81, ss. 1, 2. In accepting this location the defendants assumed the burden imposed by section 4 of the same chapter that "no poles, structures, or wires shall be so placed as to interfere with the safe, free and convenient use of any highway for public travel." As this duty is imposed upon the defendants by statute, it is unnecessary to refer to authorities declaring the obligation of those lawfully maintaining in public ways wires for the transmission of electricity to exercise care for the safety of the traveling public. 9 R. C. L. 1205. There was evidence that it was mechanically possible though commercially impracticable to insulate wires carrying the voltage these did through a tree so that one would not be injured by contact with them while climbing the tree. The expense of doing what may be necessary to prevent injury to others is not an absolute answer for failure to do so. *Philbin* v. *Company*, 218 Mass. 394, 397. The plaintiff therefore had the right to invoke the judgment of the jury if his injury resulted from the breach of the defendants' duty to him as one of the traveling public. There is no contention that the defendants' wires as maintained on the day of the injury interfered in any way with the ordinary use of the highway for public travel. There was evidence that they were not so maintained as to render vertical travel through the tree in the competitive pursuit of hornets' nests, as the plaintiff was engaged when injured, safe, free or convenient. The plaintiff's injury demonstrates that use of the wires in aid of such pursuit was extremely dangerous. The fundamental question therefore is whether the plaintiff when injured was in the exercise of the public right of travel so as to claim the protection of the duty toward travelers imposed by the statute and the common law. "Travelers . . . have the right to do all acts reasonably incident to 'a viatic use of the way.'" What acts are reasonably incident to a proper use of the highway is a question of fact. *Lydston* v. *Company*, 75 N. H. 23, 24. If the public right embraces some right in the tree, the question might be for the jury, if it were not held that reasonable men must find that traveling twenty feet in a vertical direction with no purpose of onward progress was not making a viatic use of the way. But the plaintiff as a member of the public had no greater right in the tree than was taken for public use. "As the power of eminent domain is the public power of buying what is necessary for public use, and as a piece of land, including the fee,

is not taken by that power when an easement is all the public needs, a highway taken by that power is not a public pasture, but a public way. The grass is a part of the land, and, with the soil and rocks, remains the property of the land-owner, subject to the public right of way." *Varney* v. *Manchester*, 58 N. H. 430, 432.

Trees by the roadside unless springing up fortuitously are planted for shade or ornament. Generally they are the property of the adjoining landowner. In the absence of evidence transferring the title out of him, it is to be assumed such trees are his property. In him is vested the right of property and of beneficial enjoyment. The public has no right to the trees or to use them, even if necessarily removed to construct or maintain the way. For any interference with his possession or right of possession in such trees the adjoining owner has his action. *Bigelow* v. *Whitcomb*, 72 N. H. 473; *Baker* v. *Shepard*, 24 N. H. 208. Assuming that climbing trees in sport, utilizing them as a gymnasium provided by nature, is a reasonable use of a tree such use is a part of the beneficial enjoyment of property ownership in the tree which was not taken from the owner by the public. As the public did not take from the owner the potentiality of the tree for use for gymnastic evolutions, the plaintiff as one of the public had not the right to the personal enjoyment of such use. As the evidence discloses no breach of duty to the traveling public, there was no negligence toward the plaintiff as one of the public. The plaintiff shows no other relation to the tree. He did not own the tree or the land on which it stood or the lot adjoining the highway. There was no evidence he was climbing the tree in exercise of the proprietary right of the adjoining owner by his request or express or tacit permission. He had no right in the tree unless his infancy as matter of law gave him the right to go wherever his childish fancies might lead him. This latter proposition appears to be the law in some jurisdictions but is not the rule here. *Devost* v. *Company*, 79 N. H. 411. "An electric company, maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire." Curtis, Electricity, *s.* 512. Understanding by "such persons," persons who "may lawfully climb a tree" this sentence correctly states the law. The later sentence of the section quoted in the plaintiff's brief, "The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high tension wires insulated in places where children when climbing a tree will come in contact with them,"

can be sustained as a statement of law only upon the theory that children have the legal right to climb all trees that they are able to climb. The cases cited by the plaintiff, where upon facts substantially similar to the present recovery has been permitted, all stand upon the conclusion upon one ground or another that the climber was rightfully in the tree. When such is the fact, failure to exercise care in the maintenance of electric wires is evidence of a breach of duty toward the climber, if such use of the tree is reasonably to be anticipated. The cases cited are rested either upon a permissive right from the owner of the tree (*Mullen* v. *Company*, 229 Pa. St. 54, 57; s. c. 77 Atl. Rep. 1108); a different view of the public right in the street (*Temple* v. *Company*, 89 Miss. 1; *Benton* v. *Public Serv. Com.*, 165 N. C. 354) from what is here entertained or the rule which was rejected in this state in *Frost* v. *Railroad*, 64 N. H. 220. If the manner in which the defendants maintained their wires was a breach of duty owed by them to any who might rightfully climb the tree, such persons would have an action for their injury. See *Philbin* v. *Company*, *supra; McCrea* v. *Company*, 216 Mass. 495. In these cases the parties injured were lawfully engaged in removing moth nests and climbed the trees for that purpose. But the failure of the defendants to use care which might render them liable for injury to those lawfully in proximity to their wires does not create liability as to those there without right.    *Garland* v. *Railroad*, 76 N. H. 556.

It is argued that if the plaintiff was a trespasser as against the owner of the adjoining lot he was not a trespasser as against the defendants. This argument overlooks the legal location of the defendants' wires through the tree. So much of the public right of way as was reasonably necessary for the defendants' use had been assigned to them. Any unauthorized interference with that right was a wrong against them. If the plaintiff's attempt to use the wire as an aid in climbing had resulted in property loss or other damage to them instead of a personal injury to himself, they would have had an action against him for the damage. *Buch* v. *Company*, 69 N. H. 257, 261. In *Daltry* v. *Company*, 208 Pa. St. 403; s. c. 57 Atl. Rep. 833, the defendants had no possession or right of possession of the premises where their wires caused injury to another trespasser. In *Thompson* v. *Company*, 77 N. H. 92, the defendants' pole was in the highway without right, while there was evidence the plaintiff was making a viatic use of the way. *Varney* v. *Manchester*, *supra; Devost* v. *Company*, *supra*. Neither case is an authority upon the facts now presented. The defendants as lawful occupants of the tree owed no

duty to a trespasser or bare licensee greater than that owed by the owner of the tree. *Cumberland Telegraph &c. Co.* v. *Martin's Adm'r,* 116 Ky. 554; s. c. 63 L. R. A. 469; *McCaughna* v. *Company,* 129 Mich. 407; s. c. 95 Am. St. Rep. 441; *Hector* v. *Company,* 161 Mass. 558; *Note,* 3 L. R. A. (N. S.) 988. The defendants were not bound to anticipate "chance or casual trespass" on the tree. *Garland* v. *Railroad, supra.*

Though there was evidence children played about the tree and had climbed into it, there was no evidence this practice had been brought to the knowledge of the defendants. As to them the case stands upon the general propensity of boys to climb trees. The burden of making safe playgrounds of each of the many trees in the city through which their wires passed which it was possible for boys to climb cannot reasonably be placed upon the defendants merely because of the general propensity of boys to climb. Proof that with knowledge that children or other persons were in the habit of assembling near their wires and that the defendants continued to charge them with electricity without taking precautions for the protection of those whose safety was thereby endangered, might present a case of active intervention which is not disclosed by the evidence now before the court.

As the evidence stands, there was nothing for the jury.

*Exception sustained: verdict and judgment for the defendants.*

PEASLEE, J., was absent: YOUNG, J., dissented: the others concurred.

After the foregoing opinion was filed the plaintiff moved for a rehearing, and argument upon the motion was invited.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the motion.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. William N. Rogers* orally), opposed.

WALKER, J., was not present at the argument upon the motion. PARSONS, C. J., and PLUMMER, J., were of opinion that the former result should be affirmed.

PEASLEE, J., *dissenting.* The case is barren of evidence as to what right either the plaintiff or the defendant had in or near the tree, and the motion to take the case from the jury might be disposed of

upon the ground that upon the evidence it could be found that neither had rights superior to the other. *Thompson* v. *Company*, 77 N. H. 92. A grant of an easement to maintain the wires cannot be presumed from the evidence of user for twenty years. P. S., c. 81, s. 17. But the course of the trial and the exceptions to the charge make it necessary to consider other aspects of the case.

The argument here has been largely from the standpoint that the plaintiff was a trespasser in the tree. It is to be noted at the outset that such a trespass would not be a wrong against the defendant. *Thompson* v. *Company, supra; Fitzpatrick* v. *Penfield* (Pa.), 109 Atl. Rep. 653. If the plaintiff's climbing the tree was a wrongful act as against the owner of the tree, it would not put the plaintiff in the position of a wrongdoer in the suit against this defendant. *Wilson* v. *Company*, 74 N. Y. App. Div. 596. The wrongfulness of the plaintiff's entry upon the locus would at most be material here only as one of the circumstances bearing upon the question whether the defendant ought to have anticipated his presence. *Felch* v. *Railroad*, 66 N. H. 318.

The claim that the defendant had such an exclusive right to the space occupied by its wires that any contact with them was wrongful as matter of law is not in accord with the authorities in this jurisdiction. "The instruction that 'the plaintiff's intestate had no right to touch the wire of the defendant company unless it interfered with his passage along the highway,' amounts to ruling as a matter of law upon a question of fact. The question was to be settled by the application of the doctrine of reasonable use, and the instruction was rightly refused." *Lydston* v. *Company*, 75 N. H. 23, 26. The fact that the wires were maintained under some legal right does not necessarily exonerate the defendant from liability to one who casually comes in contact with them. *Philbin* v. *Company*, 218 Mass. 394. The right conferred upon the defendant was merely to maintain the wires in a reasonable way.

Much stress is put upon the fact that the defendant's superintendent testified that he had no knowledge that boys were in the habit of climbing there, and that there was no direct testimony that any employee of the defendant knew the fact. Assuming that upon all the evidence in the case it could not be found that the defendant had knowledge of the situation, its freedom from fault is not necessarily established.

In the exercise of the easement assumed to have been granted to it, the defendant was bound to do all that a reasonable man would do to

protect the rights of others.   This is the common law rule, and the statute provides that the company shall "be responsible directly to any party receiving injury in his person or estate from the wires or their supports, or from the use thereof by the proprietors."   P. S., c. 81, s. 16.   Merely looking at the tree and its surroundings might not be enough.   In view of the known propensity of boys to climb trees in the highway, frequently with the tacit assent of the owner of the adjoining land, and of the fact that in any event it was not an invasion of the defendant's rights, it was for the jury to say whether the defendant was not under a duty to make inquiries and inform itself as to the situation.   *Davis* v. *Railroad,* 70 N. H. 519, 522.

The defendant's ignorance does not necessarily excuse it.   In *Brown* v. *Railroad,* 73 N. H. 568, 573, it was held upon most thorough consideration that the defendant might be liable if it "failed to exercise due care to discover her presence in such a situation when circumstances existed which would put a person of average prudence upon inquiry."   The same rule was applied in earlier and later cases. *Hobbs* v. *Company,* 75 N. H. 73, 76 *et seq.*

It is true that when there is no relationship there is no duty, and that the landowner bears no relation to casual and unknown trespassers.   *Garland* v. *Railroad,* 76 N. H. 556.   But whenever there is evidence that the trespass was known, or would have been if reasonable care had been used to discover it, a relation exists and a duty is imposed.   The rule of reasonable conduct is applied in this jurisdiction not only to regulate conduct when the relation of the parties is otherwise fully established, but also to show the extent of an existing relation.   *Hobbs* v. *Company, supra.*   It is a reasonable rule because it only calls for reasonable conduct.   It does not apply to cases where the defendant had no knowledge of facts which would put him upon inquiry concerning the plaintiff, or his class.   The obvious reason is that such a rule would impose a duty towards an entire stranger. *Garland* v. *Railroad, supra.*

The propensity of boys to play in the street and to climb trees (especially where the adjacent land is unoccupied) is a matter of common knowledge.   It would not be unreasonable, therefore, to conclude that the defendant ought at least to have maintained such oversight of its lines as would have informed it that this probable occurrence was a frequently accomplished fact at this place.   This is not a case of intrusion upon the defendant's premises, or of going where no one would be expected to go.   From facts like those here presented a relation may be found to exist whereby the de-

fendant is charged with knowledge of all that reasonable inquiry would have disclosed. *Minot* v. *Railroad*, 73 N. H. 317, 321.

This conclusion does not infringe upon the established law as to non-liability to a trespasser for the mere condition of premises. That rule is said to be that if the owners "let him entirely alone" they are not answerable. *Buch* v. *Company*, 69 N. H. 257, 260. It is based upon the argument that to impose liability under such circumstances would unreasonably limit the use of property. *Frost* v. *Railroad*, 64 N. H. 220; *Hobbs* v. *Company, supra,* p. 76. It applies both to cases where there is no relation (the chance or casual trespasser instances) and also to those where there was reason to anticipate that a trespass would thereafter occur. There is a relation in the latter case, and the landowner is liable if he unreasonably sets a trap for the prospective invader. *Burrill* v. *Alexander*, 75 N. H. 554. The reason he owes no duty in respect to mere negligence as to the condition of premises is not the lack of some sort of relation between the parties, but the common sense proposition that to impose such a duty would be unreasonable. The limit of responsibility is established as it is in this jurisdiction for the reason suggested in another connection in *Cavanaugh* v. *Railroad*, 76 N. H. 68, 72 — ". . . the real foundation for the rule is merely its fundamental justice and reasonableness."

Liability was denied in the *Buch* case, and in others both before and since, solely upon the ground that the defendant took no action after the trespassing plaintiff's presence was known or ought to have been. The rule has been consistently applied and strictly limited. · *Hobbs* v. *Company, supra.* If in *Frost* v. *Railroad, supra,* the accident had been caused by the defendant's operation of the turn-table without a reasonable lookout for children, who habitually played there, a very different case would have been presented. *Duggan* v. *Railroad*, 74 N. H. 250.

The assertion sometimes made that children are here denied rights which would be accorded to an adult is contrary to the fact. Liability is denied in each instance, not because the landowner is not charged with knowledge, but because the knowledge imposes no duty to prepare the premises for future trespassers. It is not an unequal rule, nor does it imply that a landowner is not chargeable with knowledge of childish propensities.

The fact that the condition of premises will hereafter attract children thereto is not enough in this jurisdiction to prove such a relationship as establishes a duty to exercise care in one's present

actions. *Devost* v. *Company*, 79 N. H. 411. But the fact that for any reason (or for no reason) they are already upon the premises may impose such a duty as to the subsequent acts of the landowner. The mere maintenance of an immobile "attractive nuisance" does not make out a case for the attracted infant trespasser under our law. But the continued existence of the attraction may prove that the defendant ought to know that probably children have already been attracted to it; and, if the imputation of such knowledge is found reasonable in fact, the relation imposing a duty to use care towards them in one's future action is also proved. It is the existence of the attraction, to the defendant's knowledge, rather than the fact that the defendant maintains it, that is of importance.

It is true that the license assumed by children because of their lack of matured sense of responsibility, or appreciation of legal rights, does not create for them a right to invade the property of another. But when, as here, the issue is what past occurrences one ought, as matter of fact, reasonably to apprehend, there is no satisfactory ground upon which the natural instincts and propensities of children can be ignored. *Wilson* v. *Company*, *supra*.

In other aspects of the law as to reasonable conduct it is uniformly held that the attributes of children are to be taken into account in determining whether one's conduct toward them measured up to the legal standard. Like consideration is to be given when their conduct, comprehension or responsibility is involved.

The immaturity of judgment incident to youth must be taken into account by an employer. *Richardson* v. *Adams*, 77 N. H. 571. In determining the reasonableness of the conduct of a landowner towards his licensees or invitees the fact that because they were children they would probably indulge childish proclivities "might reasonably have been foreseen." *Hobbs* v. *Company*, *supra*, *p.* 83. The common knowledge that a boy of fourteen is less likely to be cautious and apprehensive for his own safety than ordinary men, and his immaturity of judgment, warrant a finding that he did not understand as an adult would. *Lane* v. *Manchester Mills*, 75 N. H. 102. The master's duty is to be determined in view of these facts. *Ib.* That a child needs instruction or warning of the dangers incident to machinery may be found from the fact that he is a child. *Driscoll* v. *Rolfe*, 75 N. H. 586. The jury may consider the plaintiff's age as bearing upon his understanding the risks of his employment. *Disalets* v. *Company*, 74 N. H. 440; *Goodale* v. *York*, 74 N. H. 454; *Slack* v. *Carter*, 72 N. H. 267. The incapacity of young children to use care

is taken judicial notice of as an incontrovertible fact. *Bisaillon* v. *Blood*, 64 N. H. 565. In the case of older children, their youthful incapacity is for the jury to consider upon this issue. *Duggan* v. *Railroad, supra; Felch* v. *Railroad, supra.*

Applying the well-established principle that one must apprehend the ordinary conduct of children, the case comes well within the decisions upon the issue of the defendant's knowledge. The habit of passengers to take a short cut is evidence that the railroad ought to know that they will do so in the future. *Brown* v. *Railroad, supra.* Common knowledge that people naturally congregate at a passenger station is a sufficient foundation for a finding that the railroad ought to have known of the plaintiff's presence there. *Davis* v. *Railroad, supra.* Past use of a path is evidence that the defendants ought to know it is in use at the present time. *Minot* v. *Railroad, supra,* p. 321; *Mitchell* v. *Railroad,* 68 N. H. 96. The habit of trespassing children to use a railroad crossing as a playground warrants a finding that the railroad was chargeable with knowledge of their presence upon a certain occasion. *Duggan* v. *Railroad, supra.* The landowner's duty to anticipate the presence of habitual trespassers upon his premises is recognized in many other cases. *Shea* v. *Railroad,* 69 N. H. 361; *Myers* v. *Railroad,* 72 N. H. 175; *Carney* v. *Railway,* 72 N. H. 364, 370; *Madden* v. *Railroad,* 76 N. H. 379; *Nappi* v. *Railway,* 78 N. H. 261. No sound reason appears for distinguishing the above cases from the present one. They plainly establish the rule that there may be a duty to apprehend that certain acts have been done although those acts are in a sense unlawful. The illegality of the act is a reason for not apprehending it; but it is not a conclusive reason, and may be outweighed by the other circumstances of the case.

And aside from the commonly known facts as to childish instinct and proclivities, there appears in the present case the added fact that the boys' use of the tree had been frequent enough to be known to the neighbors for several years. Upon this evidence alone it is impossible to distinguish this feature of the case from *Duggan* v. *Railroad, supra.*

The question remains whether the transmission of electric current by means of these wires was active intervention. What conduct comes within this class was argued with great elaboration in *Davis* v. *Railroad,* 70 N. H. 519. It is there said that it is immaterial "whether the blow . . . was struck by the landowner's hand, or by a locomotive or stationary machine under his control; for if the machine is

under his control it only acts through him, and its acts are his. This is a rule of universal application." (*p.* 520.) The statement in *Buch* v. *Company, supra, p.* 262, that "danger from machinery in motion in the ordinary course of business cannot be distinguished from that arising from a well, pit, open scuttle, or other stationary object," was made in speaking of a situation where machinery was already in motion when the trespass first occurred. Its logic would extend to cases where locomotives are already moving, but its application to such situations was denied by the later decision in *Davis* v. *Railroad, supra.* And it is difficult to perceive where a distinction as matter of law, as contrasted with an inference of fact as to reasonable conduct, can be drawn between stopping a set of revolving cards, checking the speed of a moving train, or turning aside the blow from a descending axe. The true distinction is between things which are static, and acts which are dynamic within the party's control.

The fact that the act setting the force in motion was performed at a point distant from the scene of the accident does not relieve the defendant from responsibility. If it had habitually discharged bullets from a high-powered rifle through the branches of this tree, it would not be an excuse, as matter of law, to show that the discharge was from a point a mile distant, or that the firing was practically continuous.

The test stated in *Duggan* v. *Railroad, supra, p.* 251, is applicable here. "The question whether there was any evidence from which it could be found the defendants were negligent resolves itself into the question whether or not it can be said as a matter of law that the ordinary man is accustomed to run a train at a speed of fifty miles an hour, over a grade crossing on which he knows small children may be playing, without doing anything to determine whether there are any children on it until he is so close to it that he can do nothing to prevent an accident." So in this case, the question for the jury was whether the average man would continue to use these wires to transmit a dangerous current of electricity through the limbs of a tree, if it was found to be chargeable with knowledge that boys might be climbing there, without making a reasonable effort to protect them or to warn them of the danger. There was sufficient evidence to warrant the submission of the case to the jury upon this ground.

The question of active intervention was not considered in *Devost* v. *Company, supra, p.* 411. In the opinion it is stated to have been conceded that if the plaintiff was a trespasser the city owed him no duty; and as it was concluded that such was his status, a judgment

was ordered for the defendants. In *Lavoie* v. *Company*, 79 N. H. 97, recovery upon this ground was denied because there was no evidence of a negligent failure to know of the child's presence.

The exception to the charge because it submitted the question whether the defendant ought to have anticipated the plaintiff's presence, is disposed of by what has been said upon the motions to take the case from the jury.

The charge is also excepted to as giving the jury to understand that as against the defendant the plaintiff was rightfully in the tree, and not a trespasser or mere licensee. The charge does not appear to be open to such interpretation, but if it is, there was no error. The exception relates solely to the question of the rightfulness of the plaintiff's presence in the tree. It is not claimed that the jury were instructed that the plaintiff had rights superior to the defendant's. The objection is to permitting the jury to act upon the hypothesis that each party was legally at the point of contact.

It is assumed that the defendant lawfully strung its wires at the place of the accident, but there is no evidence or claim that it had any other or further right in the premises. The only direct evidence touching title to the tree was that the plaintiff's father did not own the adjacent lot; and the only evidence of possession was that the plaintiff and his associates used it for a playground. In this state of the case the plaintiff was not required to produce evidence of title or of a license from the owner. As against those having no title or right of possession his own possessory right was complete, and for any infringement upon it by strangers to that right he has his legal remedy.

Cases involving claims against property owners by their alleged licensees are not in point here. As against one showing a superior title, the party having bare possession has no standing; but as against strangers he has his action. *Jenkins* v. *Palmer*, 72 N. H. 592; *Fowler* v. *Owen*, 68 N. H. 270; *Barstow* v. *Sprague*, 40 N. H. 27. If the defendant interfered directly with his possession he could maintain trespass. *Darling* v. *Company*, 74 N. H. 515. If it did so indirectly by careless management of its wires, he has his action in case.

It is also insisted that even if a duty to the plaintiff was established there was no evidence of the defendant's fault. It appeared that it is possible to provide an insulation which would make contact with the wires comparatively harmless. The fact that it would be very expensive does not show, as matter of law, that it is unreasonable to demand its use. *Philbin* v. *Company*, *supra*. Even if it were con-

ceded that the expense of such protection would be practically pro-
hibitive, no reason appears why a warning sign, calling attention to
the invisible danger, should not have been posted upon the tree.
The plaintiff testified that he did not suppose the wires carried a
dangerous current; and it is a fair inference that if he had been
warned the accident would not have occurred.

The claim that it conclusively appeared that the plaintiff was
guilty of contributory negligence is not well founded. He testified,
in substance, that he knew there were wires running through the
tree, but that he understood they carried only a low voltage, such as
would give him a harmless shock. He understood that the wires were
not dangerous. It is not a case of failure to think of a known danger
(*Cronin* v. *Company*, 75 N. H. 319), but of a mistake as to the existence
of danger. *Hurlburt* v. *Company*, 76 N. H. 469. Upon such facts
it is not unreasonable to conclude that the plaintiff acted as the
average person might. One may be reasonably prudent in failing to
take thought to avoid contact with a non-poisonous serpent, though
his conduct would be grossly negligent if he knew the creature was a
rattlesnake.

YOUNG, J., concurred in the foregoing opinion. \