John B. BENNETT, Plaintiff-Appellee,

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Defendant-Appellant.

Peter D. BENNETT, Plaintiff-Appellee,

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Defendant-Appellant.

Nos. 75–1468 and 75–1469.

United States Court of Appeals, First Circuit.

Argued March 3, 1976.

Decided Sept. 20, 1976.

Martin L. Gross, Concord, N. H., with whom Sulloway Hollis Godfrey & Soden, Concord, N. H., was on brief, for defendant-appellant.

Ronald L. Snow, with whom Leo B. Lind, Jr., and Orr & Reno, Concord, N. H., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Peter Bennett and his son, John Bennett, residents of Massachusetts, brought this diversity action for personal injury in the United States District Court for the District of New Hampshire, against Public Service Company of New Hampshire [PS Co.]. At the close of the evidence, defendant moved unsuccessfully for a directed verdict. After jury verdicts for the plaintiffs, the court entered judgments in the amount of $8,133.71 for Peter Bennett and $42,000.00 in favor of John Bennett. The district court denied PS Co.'s motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and defendant brought this appeal.

Since the court is reviewing the denial of defendant's motions for directed verdict and for judgment notwithstanding the verdict, the facts are presented in a light most favorable to plaintiffs. On August 14, 1971, John Bennett climbed a utility pole owned by PS Co., pole # 135/22, and came in contact with an uninsulated electric wire carrying 2400 volts. Seriously burned, Bennett was thrown from the pole injuring his back. The pole was at the end of a power line that had been constructed in 1948 to supply electricity to a water pump in a pumphouse located 34 feet from the pole and 18 feet from the shore of nearby Silver Lake in Harrisonville, New Hampshire. The wire running from the pole to the pumphouse was insulated. The pole itself was approximately 50 feet from the lake, in a growth of hardwood and brush, and was supported by a bare, metallic guy wire. The pumphouse had formerly serviced a boys summer camp, Camp Marienfield, situated one or two miles inland from the lakeshore, and the power line ran from the camp buildings to the pumphouse. After the camp closed permanently in the early 1950's, electrical service for the pump was discontinued, but PS Co. continued to use the line to service a new customer, whose service line connected with the pump line at the second to the last pole on the line, pole # 135/21. PS Co. did not de-energize the line between that pole and the dead end pole. Over time the pumphouse deteriorated, and by August of 1971, the interior junction boxes had been ripped out and the meter on the exterior of the pumphouse had been removed.

On the day of the accident, John Bennett was at the former Camp Marienfield grounds assisting a college friend, who was in charge of a field station located a mile or more from the pumphouse and on the same property, operated by Browne & Nichols School of Cambridge, Massachusetts. Bennett was not a paid member of the staff. He and two other persons had walked to the lakeshore on a path from the camp and had gone swimming from a beach located some 30 feet from the pumphouse. Bennett noticed the pumphouse while swimming and, after getting out of the water, walked along the shore to the pumphouse. Surmising that the pump had been used to supply water to the camp buildings, Bennett decided to climb the utility pole "and attempt to just see what the condition was, where the wire connected, so I could have some idea of the general condition of things. . . . [I]f I was able to give the power company some sort of assessment of just what the situation was at present, they then might be able to establish service."

Bennett gained access to the pole by standing on an outcropping located six feet

94

beneath the first pole step. The distance from the step to the base of the pole was approximately 6 feet 3 inches. Bennett grasped the first step and jumped up to grab the second step, which protruded from the pole one and one-half to two feet above the first. After climbing to the top pole step, Bennett, attempting to see where the insulated wire connected, touched the top cable of two cables running to the next pole and received the shock causing his injuries. He did not believe that the wires were charged.

Although the pole is located in a wooded section of the lakeshore, the area around the Lake is populated with summer cottages, and the Lake, which is about a mile across, is the scene of various recreational activities. The pumphouse is visible from the Lake but not from the nearby beach, and the pole is visible only from a location near the pumphouse. PS Co. inspected the pole throughout the period from 1948–71, and was aware of the general surroundings including the recreational character of Silver Lake.

After considering these facts and the entire record we conclude that they are insufficient to permit recovery under New Hampshire law as there is inadequate evidence for the jury to have found that PS Co. should have anticipated the presence of a trespasser such as Bennett on its pole in proximity to the live wires at the top. We therefore reverse.

The parties do not contest the district court's statement in its jury charge that Bennett was a trespasser, and appear to agree that a property owner owes no duty of care to an unknown trespasser if his presence cannot be anticipated. *See Labore v. Davison Construction Co.,* 101 N.H. 123, 124–25, 135 A.2d 591, 592 (1957). Their disagreement in this case comes from applying that test for liability to the facts. PS Co. argues that it could not reasonably have anticipated that a trespasser would climb pole # 135/22. Bennett maintains that considering all the circumstances, PS Co. should have anticipated the presence of a trespasser there.

The case of *Labore v. Davison, supra,* is the starting point for both parties in defining the duty PS Co. owed to Bennett. In *Labore,* plaintiff's father sued to recover for injuries suffered when the plaintiff, a three-year-old child, fell through an open hole on the second floor of defendant's building. Despite plaintiff's allegation that "defendant for at least ten days prior to the accident had notice that children . . . were entering and playing about the building, . . ." 101 N.H. at 124, 135 A.2d at 592, the trial court granted defendant's motion for nonsuit. The Supreme Court of New Hampshire affirmed, reiterating the limited duty a landowner owes to a trespasser:

"In *Burrill v. Alexander,* 75 N.H. 554, 555, 78 A. 618, 619, the general rule regarding the liability of landowners to trespassers was stated to be that landowners 'are not liable unless the injury was caused intentionally' and 'when the defendant is not present and acting at the time, he is under no liability to a trespasser on account of the mere condition of his premises.' At the same time, however, it was recognized that liability to a *known* trespasser might also arise from active intervention on the part of the landowner. *Buch v. Amory Mfg. Company,* 69 N.H. 257, 44 A. 809; *Hobbs v. George W. Blanchard & Sons Company,* 75 N.H. 73, 70 A. 1082, 18 L.R.A.,N.S., 939." [Emphasis supplied.]

*Id.* at 124–25, 135 A.2d at 592. The court expanded on the active intervention doctrine by quoting from *Dillon v. Twin State Gas & Electric Co.,* 85 N.H. 449, 453, 163 A. 111, 113 (1932): "A defendant in his own interest causing dangerous forces to operate or dangerous conditions to exist should reasonably protect those *likely* to be exposed to them and not reasonably in fault for the exposure." [Emphasis supplied.] While admitting that "failure to halt an active force already in motion may constitute active intervention as well as the act of setting such force in motion", 101 N.H. at 125, 135 A.2d at 593, the court in *Labore* could find no active force, other than gravity, causing plaintiff's injury. The court also observed,

"there is no indication that the plaintiff was misled by any deceptive condition maintained by the defendant for which it may be held accountable", *id.* at 126, 135 A.2d 593, but cited no New Hampshire precedent for a theory of liability based on deceptive conditions.

We read *Labore* as endorsing a two step analysis in defining a property owner's liability to a trespasser: a property owner owes no duty of care to a trespasser whose presence is not either known or reasonably to be anticipated; and to trespassers who are known or reasonably to be anticipated, a landowner owes a limited duty not to intervene actively by force against the trespasser. This approach is consistent not only with the developments in New Hampshire law since 1900 but also with current hornbook law. *See* W. Pros-

ser, Handbook of the Law of Torts § 58 (4th ed. 1971); Restatement (Second) of Torts, § 335 (1965).[1]

But while *Labore* acknowledged a two-step analysis, the focus in that case was upon the second step only. Defendant there purportedly knew that children had previously trespassed; thus the existence of a duty of care was not questioned. What was questioned was the nature of the duty and whether or not it had been violated— the court finding no violation since plaintiff had not actively intervened against the trespasser. The instant appeal raises, however, the first relevant issue under New Hampshire law: whether PS Co. had any duty to Bennett, which turns on whether from the known facts it should have anticipated the presence of a trespasser on the pole.

---

1. The New Hampshire Supreme Court in *Labore,* as it has in other cases, referred to the Restatement of Torts to determine if its result was consistent with the Restatement approach to liability, 101 N.H. at 125, 135 A.2d at 593; *see, e. g., Savoie v. Littleton Construction Co.,* 95 N.H. 67, 71–72, 57 A.2d 772, 775 (1948); and we think it permissible in determining how a New Hampshire court would decide this case to take supplementary notice of the Restatement. The conclusion that under New Hampshire law PS Co. cannot be liable because it had no reason to anticipate the presence of trespassers is in accord with section 335 of the Restatement, which reads as follows:

§ 335. *Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area*
A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if
(a) the condition
(i) is one which the possessor has created or maintains and
(ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and
(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.
The Restatement sets forth a fact situation somewhat analogous to the instant case to illustrate the effect of the section:
*Illustration:*

1. A, knowing that persons are in the habit of trespassing upon his land at a point close to his unfenced powerhouse, permits a high voltage electric wire, strung at a height of five feet and so concealed by vegetation as to be difficult of observation, to become uninsulated. B, a trespasser, wanders from the adjacent part of the land into the yard of the powerhouse and comes into contact with the wire. The contact causes B's death. A is subject to liability for B's death.
The illustration, of course, assumes knowledge "that persons are in the habit of trespassing upon his land at a point close to his unfenced powerhouse. . . ." No similar assumption of knowledge of trespassers on the pole can be made here given the lack of evidence that others were ever in the habit of trespassing as well as the physical inaccessibility of the wires on the pole. Furthermore, in defining that part of the rule imposing liability when a possessor "from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, . . ." the Restatement takes a restrictive view:
"The words 'from facts within his knowledge,' which are used in this Section to qualify the phrase 'should know,' are inserted to indicate that the possessor is required only to draw reasonably correct conclusions from data known to him, and is not required to exercise a reasonable attention to his surroundings or to make any inspection or investigation in regard to them."
Restatement (Second) of Torts, § 334 (1965). We thus see no reason to assume that a New Hampshire court today would reach a result inconsistent with the earlier New Hampshire cases cited or with the conclusions we express.

In determining this question, we do not forget that we decide only whether there was sufficient evidence on the issue of reasonable anticipation to entitle Bennett to a jury determination of PS Co.'s liability, following our oft-stated rule that "[w]henever the evidence, viewed in the light most favorable to the party against whom the motion for directed verdict is made, is such that fair-minded men may draw different inferences therefrom and reasonably disagree as to what the verdict should be, the matter should be allowed to go to the jury." *Arnold v. Aetna Engineering Co.*, 514 F.2d 1147, 1148 (1st Cir. 1975) [citations omitted]. The three New Hampshire cases that have addressed the issue of when a utility should be held to have anticipated the presence of a trespasser convince us, however, that plaintiff here failed to introduce sufficient evidence to create a jury issue in this case.

In *McCaffrey v. Concord Electric Co.*, 80 N.H. 45, 114 A. 395 (1921), plaintiff, while climbing a tree, came in contact with defendant's uninsulated electric wires which passed through the tree. The court granted defendant's exception to the denial of its motion for a directed verdict and reversed a judgment for the plaintiff, ruling that the utility had no duty to the plaintiff since it had no knowledge that young boys climbed the tree in question. "The defendants were not bound to anticipate 'chance or casual trespass' on the tree." *Id.* at 49, 114 A. at 397. The court was unwilling to find reason to anticipate trespassers from "the general propensity of boys to climb trees," *id.*, 114 A. at 397, and suggested a very narrow test for liability. "Proof that, with knowledge that children or other persons were in the habit of assembling near their wires, and that the defendants continued to charge them with electricity without taking precautions for the protection of those whose safety was thereby endangered, might present a case of active intervention . . . ." *Id.*, 114 A. at 397.

In a similar case decided three months after its decision in *McCaffrey*, the Su-

preme Court of New Hampshire again granted defendant's exception to the trial court's denial of its motion for directed verdict. In *Lambert v. Derry Electric Co.*, 80 N.H. 126, 113 A. 793 (1921), the plaintiff, without permission, had climbed a utility pole owned by a railroad for the purpose of installing decorations and was injured when he came in contact with defendant's uninsulated electric wires strung on the pole. Although there was evidence of the utility's knowledge that other parties with equal or superior rights in the pole might be expected to permit persons to climb the pole without consulting the utility, that knowledge did not impose broad liability on the utility as to all climbers on the pole.

"In the absence of evidence of [the utility's] knowledge that an inexperienced person was on or about to climb the poles, [it] cannot be found in fault because of failure to act sooner. Knowledge some one proposed to climb the pole is insufficient because experienced persons could and did climb and work upon them . . . ." *Id.* at 130, 113 A. at 796.

The third case dealing with a utility's duty to anticipate trespassers on its wires is *Dillon v. Twin State Gas & Electric, supra.* Plaintiff's intestate was electrocuted when he grabbed defendant's uninsulated electric wires in an attempt to stop himself from falling from a steel girder on a public bridge on which he had been playing. From evidence that defendant's construction engineer had complained previously to public authorities that boys frequently played on the bridge in proximity to the wires, the court found that the utility had knowledge of frequent trespassers on its property and therefore violated its duty of care to plaintiff by failing to protect him from its wires. 85 N.H. at 451, 163 A. at 112–13.

Appellant relies on these three cases in asserting it had no duty to Bennett. Pointing to evidence that it had never received a complaint of anyone climbing the pole since the pole had been installed and emphasizing

the location of the pole in a secluded, wooded area, PS Co. denies that it had reason to have anticipated Bennett's presence on the pole. In response, Bennett argues that PS Co. had reason to anticipate trespassers because of the proximity of the beach, the recreational nature of Silver Lake, the presence of summer cottages, and the character of the surrounding property—an abandoned summer camp now owned by a school.

We think Bennett's position goes substantially beyond New Hampshire law. The conditions which he contends gave PS Co. reason to anticipate trespassers on its pole would open a property owner to much broader liability than that indicated by the Supreme Court of New Hampshire. In *McCaffrey,* the court would not accept the possibility of "chance or casual" trespasses as imposing a duty. Thus a mere propensity of boys to climb trees was held insufficient reason for a utility to anticipate the presence of trespassing boys near its wires in the tree. Rather the court insisted upon proof of actual knowledge that boys or others were in the "habit" of assembling near the wires and that the utility "continued to charge them with electricity without taking precautions for the protection of those whose safety was thereby endangered". 80 N.H. at 49, 114 A. at 397. Applying that standard, the present case would require evidence that PS Co. had actual knowledge of people coming within dangerous proximity to the wires—meaning not merely the presence of people in the area on the ground, but people either climbing the pole or otherwise placing themselves in a position near the wires so as to endanger their safety. The record, however, shows no such prior instances of trespass or even threatened trespass, but only the utility's awareness of the general presence of people and recreational activities in the Silver Lake area. To deduce from these factors that people would climb the pole would seem the same as to engage in speculation drawn from the "propensity of boys to climb trees."

The *Lambert* case is also of no help to Bennett. The court cited *McCaffrey* ap-

provingly, and found no liability to one climbing a pole uninvited even though the utility knew that the owner of the pole allowed some individuals to climb it. Adhering to a similar standard, the court in *Dillon* found a duty based on defendant's actual knowledge that boys on a public bridge often played in proximity to defendant's wires. Nothing in the instant case supplies the crucial element present in *Dillon*—namely a showing of past conduct by members of the public from which the likelihood of continued trespass in the vicinity of the wires should have been anticipated.

■ To be sure, we might conceivably imagine a New Hampshire case in the future where, notwithstanding the absence of a history of prior trespassers, there would be other evidence so compelling as to create a jury issue of anticipation. But the evidence in such a case would surely have to go beyond the factors here, which amount to little more than that the surrounding area was populated and the installation possibly unserviceable. It must be borne in mind that to come anywhere near the dangerous condition, a trespasser had to perform the feat of climbing a pole whose lowest step was six feet from the ground. And further diminishing the likelihood of trespass, a potential trespasser had to be ready to overlook the fairly obvious risks associated with examining wires on top of a strange utility pole.

■ Bennett also argues that PS Co. should be liable for maintaining "deceptive" conditions in the area, referring to the condition of the pumphouse, the climbing steps, and the visual similarity of the live wire to the guy wires supporting the pole. The only New Hampshire reference to a duty to trespassers based on deceptive conditions that has come to our attention is found in dicta in *Labore,* where the court found "no indication that the plaintiff was misled by any deceptive condition maintained by the defendant for which it may be held accountable." 101 N.H. at 126, 135 A.2d at 593. The court in *Labore* then cited two cases *Chase v. Luce,* 239 Minn. 364, 58

N.W.2d 565 (1953) (plaintiff child trespasser entitled to jury verdict on negligence of defendant in suit for injuries suffered from fall through rock lath strips on defendant's construction site); *Puchta v. Rothman,* 99 Cal.App.2d 285, 221 P.2d 744 (1950) (dissent argues for liability to known child trespasser for covering hole for skylight on second floor of building under construction).

Bennett's reliance on *Labore* in arguing that PS Co. is liable for maintaining deceptive conditions seems misplaced. The court in *Labore* raised the possibility of liability based on deceptive conditions only after it had found that the property owner owed a limited duty to the trespassing child; the existence of deceptive conditions did not relate to whether the *defendant should reasonably anticipate trespassers.* Moreover, the weak citation to authority from other jurisdictions suggests that New Hampshire has not yet adopted a full-blown theory of liability based on deceptive conditions, and it is not easy to view this case as one where such a theory might be developed and applied. Plaintiff was not the victim of a harmless looking wire on the ground but elected on his own to investigate the top of a utility pole on the questionable assumption that because the pumphouse was dilapidated and out of use, the utility line was also. No authority has been called to our attention which would indicate a utility's liability for "deception" in these circumstances. In fact, New Hampshire long ago rejected the attractive nuisance theory of liability to a trespasser in a case that bears some similarities to this one. *See Devost v. Twin State Gas & Electric Co.,* 79 N.H. 411, 109 A. 839 (1920). The Court in *Devost* found the City of Berlin not liable to a child trespasser for injuries sustained when the child came in contact with uninsulated wires while climbing on a city compressor located in a lot where children frequently played. *Id.* at 413–14, 109 A. at 840–41.

Because we hold for the reasons stated above that there was insufficient evidence that the utility knew or should have known of trespassers on the pole to permit recovery, we have no occasion to consider appellant's further claim of error relating to the jury instruction.

*Judgments reversed and complaint dismissed.*